# FOLEY

**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

777 EAST WISCONSIN AVENUE
MILWAUKEE, WI 53202-5306
414.271.2400 TEL
414.297.4900 FAX
foley.com

September 17, 2010

WRITER'S DIRECT LINE
414.297.5524
bludwig@foley.com EMAIL

CLIENT/MATTER NUMBER
060098-0343

ENDORSED ORDER

The deposition of Mr.
McDonough is limited to
one hour and may be
taken by telephone.

*/s/*
9/21

Magistrate Judge Michael H. Dolinger
United States District Court
Southern District of New York
500 Pearl Street, Room 16
New York, NY 10007-1312

SEP 17 2010

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/23/10

Re: Clarendon Nat'l Ins. Co. et. al v. Trustmark Ins. Co.
No. 09 cv 9896

Dear Magistrate Judge Dolinger:

This responds to Mr. Cygal's letter of September 15, 2010 seeking an order barring Clarendon from taking the deposition of David McDonough, who, as Trustmark's Chief Executive Officer, personally approved Trustmark's entry into at least one the Settlement Agreements that are at the heart of this lawsuit. Because he is a fact witness with direct knowledge of facts at issue in this litigation, Clarendon's notice of deposition of Mr. McDonough is appropriate. Trustmark cannot avoid producing him simply because he has the title of CEO. The Court should deny Trustmark's request for the "most extraordinary relief" of "[a]n order barring a litigant from taking a deposition." *Spreadmark, Inc. v. Federated Dep't Stores, Inc.*, 176 F.R.D. 116, 118 (S.D.N.Y. 1997).

## Dispute Background

This case concerns alleged breaches of five Settlement Agreements. Under the Settlement Agreements, Trustmark was obligated to pay Clarendon more than $10 million dollars to resolve balances due from it to Clarendon under a number of reinsurance agreements. At the time, the parties agreed, in the Settlement Agreements or in separate side letters, that Trustmark would satisfy its obligations by offset rather than cash payment. They agreed to apply the balances due Clarendon under the Settlement Agreements against other balances that continued to be disputed that Trustmark was demanding from Clarendon under other reinsurance agreements, the so-called "1998 International Treaties" and 1998 VQS Treaty."

Given that Clarendon continued to dispute its obligations to Trustmark under the 1998 International Treaties and 1998 VQS Treaty, the parties also expressly agreed that the offsets would be "without prejudice" and subject to Clarendon's "full reservation of any and all rights." At Clarendon's request, the parties further agreed to agree on preliminary "without prejudice" allocations of the offsets to specific disputed claims that Trustmark had presented for payment. This was intended to assist Clarendon in billing the offset claims to other reinsurance treaties.

BOSTON          JACKSONVILLE     MILWAUKEE     SAN DIEGO            SILICON VALLEY
BRUSSELS        LOS ANGELES      NEW YORK      SAN DIEGO/DEL MAR    TALLAHASSEE
CHICAGO         MADISON          ORLANDO       SAN FRANCISCO        TAMPA
DETROIT         MIAMI            SACRAMENTO    SHANGHAI             TOKYO
                                                                    WASHINGTON, D.C.

MILW_10463521.2


FOLEY & LARDNER LLP

September 17, 2010
Page 2

In late 2008 and early 2009, after Clarendon prevailed against Trustmark in an arbitration over the 1998 International Treaties, Trustmark abruptly refused to acknowledge Clarendon's offset rights. Trustmark reneged on its agreement to satisfy the Settlement Agreement balances by offset. It also refuses to pay those obligations. Trustmark wants its obligations under the Settlement Agreements to be discharged, but without having to pay Clarendon (either principal or interest) and without having to credit Clarendon via offset. Trustmark would have its proverbial cake and eat it too.

In purported justification of its actions, Trustmark first claimed, through its motion to dismiss, that its obligations under the Settlement Agreements were adjudicated and released in the 1998 International Treaties arbitration and in the confirmation proceeding over the resulting arbitration award. The Court has rejected that claim. (Aug. 18, 2010 Order, Docket No. 50.) Trustmark now also claims that Clarendon repudiated and materially breached the offset agreements, somehow justifying Trustmark in not acknowledging Clarendon's offset rights and also excusing Trustmark from paying its underlying obligations. (Ex. 1 at p. 5, Trustmark's Responses to Clarendon's First Set of Interrogatories.) Trustmark further alleges that it "conditioned its agreement" to enter into the settlement agreements based on Clarendon's agreement to pay "an identical amount on one or more of the reinsurance treaties that Clarendon participated on that protected Trustmark." (Counterclaim at ¶¶ 25, 30, 48, 59, 77.)

### Mr. McDonough's Factual Involvement in the Trustmark's Acceptance of the Settlement Agreements.

During the deposition of Trustmark witness Michael Hawksworth, it was revealed that Trustmark's entry into at least one of the settlement agreements at issue was subject to the approval of Mr. McDonough. In an email exchange between Mr. Hawksworth and Trustmark's Chief Financial Officer, Brinke Marcuccilli, over whether Trustmark would agree to the terms Clarendon proposed for resolving the parties' disputes over the Hallmark Program, Mr. Macuccilli indicated that he had been authorized by Mr. McDonough to proceed with the settlement.

After learning of his involvement in authorizing the Hallmark Settlement Agreement, Clarendon noticed Mr. McDonough's deposition. Given his role, Clarendon is entitled to discover, among other things, his understanding of the Hallmark Settlement Agreement, the terms that were material to his decision, and his conversations were with other Trustmark employees relating to the this and the other settlement agreements. Clarendon intends to show him documents and to inquire as to his approval of the Hallmark Settlement and the other Settlement Agreements, several of which are of a similar financial magnitude.

This information is relevant to whether, as Trustmark now alleges, Clarendon breached its agreements with Trustmark and whether those alleged breaches were "material" to the deal that Mr. McDonough signed off on. It is also relevant to the "conditions" Trustmark asserts it put on its agreement to enter into the Settlement Agreements.



**FOLEY & LARDNER LLP**

September 17, 2010
Page 3

In seeking to shield him from discovery, Trustmark incorrectly claims the deposition places an undue burden on Trustmark and that Clarendon should be restricted to asking questions of other fact witnesses. Trustmark is not entitled to pick among the fact witnesses it would like Clarendon to depose. Moreover, none of the other fact witnesses can testify to Mr. McDonough's understanding of and involvement with the Settlement Agreements at issue. Only Mr. McDonough knows why he approved the Settlement Agreements, what was material to his decision to do so, and what his understanding of the agreements was at the time. His factual involvement in approving the Settlement Agreements at issue means he has "some unique knowledge" of the facts of the case, *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001), and Clarendon should be allowed to take his deposition.

Contrary to Trustmark's suggestion, Mr. McDonough is not shielded from deposition simply because he is Trustmark's CEO. High-ranking executives "are not immune from discovery." *General Star Indem. Co. v. Platinum Indem. Ltd.*, 210 F.R.D. 80, 83 (S.D.N.Y.2006). Courts understandably disfavor allowing depositions of senior executives in situations where those senior executives have no personal knowledge of relevant facts. This is not such a case. As Trustmark's own witness has admitted, Mr. McDonough personally signed off on at least one of the Settlement Agreements that is at issue.

Trustmark relies upon a number of cases involving attempts to take depositions of executives who had no personal knowledge of the facts at issue in the dispute. *See Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374. 2007 WL 205067, at *2 (N.D. Cal. Jan. 25, 2007) (executives "had no personal knowledge of the events giving rise to this litigation" and their "involvement in the litigation is limited to receiving status reports from counsel"); *Diesel Props S.R.L. v. Greystone Business Credit II LLC*, No. 07 Civ 9580, 2008 WL 50999957 (S.D.N.Y. Dec. 3, 2008) (executive had "no unique personal knowledge that is germane to this case"). As shown above, Mr. McDonough was involved in approving at least one of the very Settlement Agreements that are at issue.

Trustmark highlights the fact that it has only produced one document bearing Mr. McDonough's name. The number of documents that contain his name is not terribly germane. Even if he avoided documenting his decisions entirely, that does not preclude Clarendon from questioning Mr. McDonough about his decision to approve the settlement. An approval that is oral is equally subject to discovery than one in writing.

Equally off point is Trustmark's observation that Clarendon did not ask questions of other witnesses about Mr. McDonough and his role. The exhibit that gave rise to the testimony about Mr. McDonough's involvement is an email authored by Mr. Hawksworth. (*See* Ex. A to Cygal Letter.) It was thus in Mr. Hawksworth's deposition that issues related to Mr. McDonough arose. Clarendon did not forfeit the right to depose Mr. McDonough because it chose to ask the author of an email about the contents of that email, rather than asking two other witnesses who were not even copied on the email. Moreover, those other witnesses could not testify to Mr. McDonough's thought process in approving the deal – that information must come from him personally.

MILW_10463521.2


**FOLEY**
FOLEY & LARDNER LLP

September 17, 2010
Page 4

    This is simply not an occasion where a party is attempting to harass an adversary by seeking the deposition of a high level executive. Until Clarendon learned of Mr. McDonough's role in approving the Hallmark Settlement Agreement, it made no effort to seek his deposition. If Clarendon's goal was simply harassment, it would have requested his (and perhaps others') depositions from the start. Clarendon did not. Moreover, as Clarendon has indicated to Trustmark, Clarendon is willing to minimize any disruption or inconvenience that Mr. McDonough's deposition may cause to him or Trustmark. Clarendon noticed the deposition for Chicago, where Mr. McDonough works. Clarendon is willing to schedule the deposition at a mutually agreeable time and has told Trustmark that it is willing to extend the upcoming discovery cutoff to accommodate the witness's schedule. Given his role in the case, there is no reason he cannot sit for deposition.

    In sum, Mr. McDonough is a fact witness with personal knowledge of Trustmark's acceptance of at least one of the Settlement Agreements that are the basis of this lawsuit. Clarendon is entitled to explore his knowledge and understanding of the settlements through deposition. Trustmark's motion to prevent his deposition should be denied.

                   Very truly yours,

                   Brett H. Ludwig

cc:  Counsel of Record