Robert A. Scher, Esq.
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
Tel:  212-682-7474
Fax:  212-687-2329

Brett H. Ludwig, Esq. (pro hac vice)
Brian P. Keenan, Esq. (pro hac vice)
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, Wisconsin  53202
Tel:  414-271-2400
Fax:  414-297-4900

*Attorneys for Plaintiffs, Counter-Defendants*
*Clarendon National Insurance Company and*
*Clarendon America Insurance Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

CLARENDON NATIONAL INSURANCE      :
COMPANY and CLARENDON AMERICA     :
INSURANCE COMPANY,                :
                                  :
                    *Plaintiffs*, :     09-cv-9896 (BSJ-MHD)
                                  :
         v.                       :
                                  :
TRUSTMARK INSURANCE COMPANY,      :
                                  :
                    *Defendant.*

-----------------------------------------------------------------x

TRUSTMARK INSURANCE COMPANY,      :
                                  :
         *Defendant, Counter-Plaintiff,* :
                                  :
         v.                       :
                                  :
                                  :
CLARENDON NATIONAL INSURANCE      :
COMPANY and CLARENDON AMERICA     :
INSURANCE COMPANY,                :

                    *Plaintiffs, Counter-Defendants.*

## CLARENDON'S ANSWER TO TRUSTMARK'S COUNTERCLAIM

Plaintiffs Clarendon National Insurance Company and Clarendon America Insurance Company (collectively "Clarendon"), by its counsel, respond to the counterclaims of defendant and counter-plaintiff Trustmark Insurance Company ("Trustmark") contained in its Answer, Affirmative Defenses and Counterclaims ("Counterclaim") as follows:

### THE PARTIES

1.      In response to paragraph 1 of the Counterclaim, upon information and belief, admits.

2.      In response to paragraph 2 of the Counterclaim, admits.

3.      In response to paragraph 3 of the Counterclaim, admits.

### JURISDICTION

4.      In response to paragraph 4 of the Counterclaim, admits.

### FACTUAL BACKGROUND

5.      In response to paragraph 5 of the Counterclaim, admits that Clarendon, through its managing general underwriter Raydon Underwriting Management Company Limited ("Raydon"), underwrote and accepted participations on several reinsurance contracts that reinsured business underwritten for Trustmark and/or its "partners" by WEB Underwriting Management ("WEB"), including a reinsurance treaty known as the variable quota share, effective June 1, 1997 ("1997 VQS"), and on its renewal effective June 1, 1998 ("1998 VQS").  Clarendon further admits that Paul Murray was the underwriter at Raydon who underwrote Clarendon's participations on the 1997 VQS and the 1998 VQS.  Clarendon further responds that the terms of the 1997 VQS and 1998 VQS speak for themselves and denies any allegations inconsistent with the terms of the placement slips and/or treaty

wordings for the 1997 VQS and 1998 VQS Treaties and further denies all other factual allegations inconsistent with this response.

6.      In response to paragraph 6 of the Counterclaim, admits that Clarendon, through its managing general underwriter, Raydon, participated on reinsurance treaties known as the International Treaties, effective October 1, 1997 ("1997 International"), and on its renewal effective October 1, 1998 ("1998 International").  Clarendon further admits that Paul Murray was the underwriter at Raydon who underwrote Clarendon's participations on the 1997 and 1998 International Treaties.  Clarendon further responds that the terms of the 1997 VQS and 1998 VQS speak for themselves and denies any allegations inconsistent with the terms of the placement slips and/or treaty wordings for the 1997 VQS and 1998 VQS Treaties and further denies all other factual allegations inconsistent with this response.

7.      In response to paragraph 7 of the Counterclaim, including all subparagraphs, admits.

8.      In response to paragraph 8 of the Counterclaim, admits for all programs except the Melex program.

9.      In response to paragraph 9 of the Counterclaim, admits that Paul Murray underwrote some retrocessional reinsurance business for Clarendon, but denies that he specialized in retrocession.

10.      In response to paragraph 10 of the Counterclaim, admits that Clarendon, through Raydon, provided reinsurance to John Hancock Life Insurance Company ("John Hancock").  Clarendon further admits that John Hancock provided reinsurance to Clarendon. Clarendon states that these reinsurance relationships are irrelevant to this case and denies Trustmark's characterizations of them and all other factual allegations inconsistent with this response.

11.     In response to paragraph 11 of the Counterclaim, denies that any of the claims with respect to the programs listed in paragraph 8 were reported back to Clarendon on the International Treaties and denies that all claims were reported back to Clarendon under the VQS Treaties.  Clarendon admits that Trustmark purports to cede some claims of the programs listed in paragraph 8 to Clarendon under the 1998 VQS.

12.     In response to paragraph 12 of the Counterclaim, denies.

13.     In response to paragraph 13 of the Counterclaim, denies.

### THE 1999 ACP ALLOCATION AGREEMENT

14.     In response to paragraph 14 of the Counterclaim, on information and belief, admits.

15.     In response to paragraph 15 of the Counterclaim, admits that Trustmark currently reports that the 1999 ACP Program is being ceded to the 1998 VQS.

16.     In response to paragraph 16 of the Counterclaim, states that as part of Trustmark's agreement to pay outstanding balances on the 1999 ACP Program through December 31, 2001, Clarendon agreed to make a "without prejudice" payment on the 1998 VQS.  Clarendon denies all other allegations in paragraph 16.

17.     In response to paragraph 17 of the Counterclaim, denies.

18.     In response to paragraph 18 of the Counterclaim, admits that the "without prejudice" terms of Trustmark's agreement to pay Clarendon for outstanding balances due on the 1999 ACP Program as of December 31, 2001 are summarized in emails dated March 12, 2003 and March 25, 2003 and denies all other allegations set forth in paragraph 18.  Clarendon further responds that the agreements were "without prejudice" and denies all allegations inconsistent with this response.

19.     In response to paragraph 19 of the Counterclaim, admits that as part of Trustmark's "without prejudice" agreement to pay outstanding balances on the 1999 ACP

Program, Clarendon agreed, also on a "without prejudice" basis, that it would pay an amount calculated by Trustmark relating to the cession of 1999 ACP claims under the 1999 VQS. Clarendon further responds that the agreements were "without prejudice" and denies all allegations inconsistent with this response.

20.     In response to paragraph 20 of the Counterclaim, admits that Clarendon and Trustmark agreed to offset the "without prejudice" payment Clarendon agreed to make on the 1998 VQS against the "without prejudice" payments Trustmark agreed to make on the 1999 ACP Program.  Clarendon denies all allegations inconsistent with this response.

21.     In response to paragraph 21 of the Counterclaim, denies.

22.     In response to paragraph 22 of the Counterclaim, denies.

### The 1999 ACP Program Commutation

23.     In response to paragraph 23 of the Counterclaim, admits.

24.     In response to paragraph 24 of the Counterclaim, admits that Clarendon and several of its reinsurers, including Trustmark, agreed to fully and finally commute all of their liabilities with respect to the 1999 ACP Program and that such commutation agreement was reduced to a final written document, which Trustmark has not attached to the Counterclaim or filed with the Court.

25.     In response to paragraph 25 of the Counterclaim, denies.

26.     In response to paragraph 26 of the Counterclaim, admits.

27.     In response to paragraph 27 of the Counterclaim, admits.

### The Hallmark Program Commutation

28.     In response to paragraph 28 of the Counterclaim, admits.

29.     In response to paragraph 29 of the Counterclaim, admits that Clarendon and several of its reinsurers, including Trustmark, agreed to fully and finally commute all of their liabilities with respect to the Hallmark Program and that such commutation agreement was

reduced to a final written document, which Trustmark has not attached to the Counterclaim or filed with the Court.

30.     In response to paragraph 30 of the Counterclaim, denies.

31.     In response to paragraph 31 of the Counterclaim, admits.

32.     In response to paragraph 32 of the Counterclaim, responds that the terms of the Hallmark Program Commutation speak for themselves and denies any allegations inconsistent with the terms of the Hallmark Program Commutation.

### The 1999 ACP/Hallmark Side Letter

33.     In response to paragraph 33 of the Counterclaim, states that the 1999 ACP/Hallmark Side Letter speaks for itself, denies Trustmark's characterization of it, and denies any allegations inconsistent with the terms of the side letter.  Clarendon further admits that it initially proposed making a $5 million good faith payment to Trustmark on a 'without prejudice" basis.

34.     In response to paragraph 34 of the Counterclaim, admits that Clarendon agreed to make "without prejudice" payments to Trustmark on the 1998 VQS and 1998 International Treaties in conjunction with Trustmark's agreement to enter into the commutation agreements covering the 1999 ACP Program and the Hallmark Program and denies the remaining allegations of paragraph 34.

35.     In response to paragraph 35 of the Counterclaim, admits that the 1999 ACP Commutation called for Trustmark to pay $1,906,943 on or before October 28, 2005 and the Hallmark Commutation required the "actual" payment of cash within 10 days without the right of offset.  Clarendon further responds that it and Trustmark entered into a "without prejudice" side letter agreement relating to the offset of Trustmark's payment obligations under the 1999 ACP and Hallmark Commutation Agreements and denies the remaining allegations of paragraph 35.

36.     In response to paragraph 36 of the Counterclaim, denies.

37.     In response to paragraph 37 of the Counterclaim, admits that Clarendon and Trustmark signed a "without prejudice" side letter agreement dated November 30, 2005, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the side letter.

38.     In response to paragraph 38 of the Counterclaim, responds that the "without prejudice" side letter is a written document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the side letter.  Clarendon further admits that Clarendon and Trustmark agreed in the "without prejudice" 1999 ACP/Hallmark Side Letter that their respective payments would be made by offset.  Clarendon denies that it was agreed that Trustmark would not owe interest, particularly in the event that Trustmark refused to credit Clarendon with the amount to be offset, and denies the remaining allegations of paragraph 38.

39.     In response to paragraph 39 of the Counterclaim, including the subparagraphs, responds that the "without prejudice" side letter is a written document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the side letter. Clarendon further admits that Clarendon and Trustmark agreed to interim "without prejudice" allocations of the offset payments, and denies any remaining allegations of paragraph 39.

40.     In response to paragraph 40 of the Counterclaim, admits that the initial "without prejudice" allocations were later changed.

41.     In response to paragraph 41 of the Counterclaim, responds that the side letter is a document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the side letter.  Clarendon further responds that the payments to be made by Clarendon were expressly "without prejudice" and subject to a full reservation of any and all of Clarendon's rights.

42.     In response to paragraph 42 of the Counterclaim, denies.

43.     In response to paragraph 43 of the Counterclaim, denies.

44.     In response to paragraph 44 of the Counterclaim, denies.

45.     In response to paragraph 45 of the Counterclaim, denies.

46.     In response to paragraph 46 of the Counterclaim, admits that Clarendon has entered into several other commutation agreements with Trustmark (among others) the terms of which speak for themselves, and that in connection with some of those agreements Clarendon and Trustmark signed without prejudice side letter agreements the terms of which also speak for themselves, and Clarendon denies any allegations inconsistent with the terms of those commutation agreements and/or side letter agreements.  Clarendon further admits that it never asserted during the negotiation of the commutation agreements that Trustmark was in breach of the 1999 ACP and Hallmark Program Commutations.  Clarendon denies any remaining allegations of paragraph 46.

### The MELEX Program Commutation

47.     In response to  paragraph 47 of the Counterclaim, admits that Clarendon and Trustmark agreed to fully and finally commute all of their liabilities with respect to the Melex Program and that such commutation agreement was reduced to a final written document, which Trustmark has not attached to the Counterclaim or filed with the Court.

48.     In response to paragraph 48 of the Counterclaim, states that the Melex Program Commutation agreement speaks for itself, denies Trustmark's characterization of it, and denies any allegations inconsistent with the terms of the commutation agreement.

49.     In response to paragraph 49 of the Counterclaim, admits.

50.     In response to paragraph 50 of the Counterclaim, admits that there is no side letter agreement between Clarendon and Trustmark in connection with the Melex Program and denies the remaining allegations of paragraph 50.

51.     In response to paragraph 51 of the Counterclaim, admits that Clarendon and Trustmark entered into a written commutation agreement for the Melex Program and further states that the Melex Program Commutation speaks for itself and denies any allegations inconsistent with the terms of the agreement.

52.     In response to paragraph 52 of the Counterclaim, states that the Melex Program Commutation speaks for itself and denies any allegations inconsistent with the terms of the agreement.

53.     In response to paragraph 53 of the Counterclaim, denies.

54.     In response to paragraph 54 of the Counterclaim, denies.

55.     In response to paragraph 55 of the Counterclaim, denies.

56.     In response to paragraph 56 of the Counterclaim, admits that Clarendon has entered into several other commutation agreements with Trustmark (among others) the terms of which speak for themselves, and that in connection with some of those agreements Clarendon and Trustmark signed without prejudice side letter agreements the terms of which also speak for themselves, and Clarendon denies any allegations inconsistent with the terms of those commutation agreements and/or side letter agreements.  Clarendon further admits that it never asserted during the negotiation of the commutation agreements that Trustmark was in breach of the MELEX Program Commutation.  Clarendon denies any remaining allegations of paragraph 56.

**The Big I Program Commutation**

57.     In response to paragraph 57 of the Counterclaim, admits.  Clarendon affirmatively alleges that Trustmark was also a reinsurer of Clarendon on the Big I Program.

58.     In response to paragraph 58 of the Counterclaim, admits that Clarendon and several of its reinsurers, including Trustmark, agreed to fully and finally commute all of their liabilities with respect to the Big I Program and that such commutation agreement was reduced

to a final written document, which Trustmark has not attached to the Counterclaim or filed with the Court.

59.     In response to paragraph 59 of the Counterclaim, denies.

60.     In response to paragraph 60 of the Counterclaim, responds that the commutation agreement is a written document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the commutation agreement.

61.     In response to paragraph 61 of the Counterclaim, admits.

62.     In response to paragraph 62 of the Counterclaim, responds that the Big I Program Commutation is a written document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the commutation agreement.

## The BIG I Side Letter

63.     In response to paragraph 63 of the Counterclaim, states that the Big I Side Letter speaks for itself, denies Trustmark's characterization of it, and denies all other allegations in paragraph 63.

64.     In response to paragraph 64 of the Counterclaim, states that the Big I Side Letter speaks for itself and denies any allegations inconsistent with the terms of the "without prejudice" side letter agreement and denies all remaining allegations in paragraph 64.

65.     In response to paragraph 65 of the Counterclaim, admits that the Big I Program Commutation called for Trustmark to pay $68,574 on or before August 21, 2006 without the right of offset.  Clarendon denies the remaining allegations of paragraph 65.

66.     In response to paragraph 66 of the Counterclaim, denies.

67.     In response to paragraph 67 of the Counterclaim, admits that Clarendon and Trustmark signed a "without prejudice" side letter agreement that is dated May 15, 2006, the terms of which speak for themselves, and denies any allegations inconsistent with the terms of the side letter.

68.     In response to paragraph 68 of the Counterclaim, responds that the "without prejudice" side letter agreement is a written document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the "without prejudice" side letter agreement.  Clarendon further responds that Clarendon and Trustmark agreed in the "without prejudice" Big I Side Letter that their respective payments would be made by offset. Clarendon denies that it was agreed that Trustmark would not owe interest, particularly in the event that Trustmark refused to credit Clarendon with the amount to be offset, and denies any remaining allegations of paragraph 68.

69.     In response to paragraph 69 of the Counterclaim, states that the "without prejudice" Big I Side Letter speaks for itself and denies any allegations inconsistent with the terms of the agreement.

70.     In response to paragraph 70 of the Counterclaim, responds that the "without prejudice" Big I Side Letter is a written document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the "without prejudice" side letter agreement.  Clarendon further responds that the payments to be made by Clarendon were expressly "without prejudice" and subject to a full reservation of any and all of Clarendon's rights.

71.     In response to paragraph 71 of the Counterclaim, denies.

72.     In response to paragraph 72 of the Counterclaim, denies.

73.     In response to paragraph 73 of the Counterclaim, denies.

74.     In response to paragraph 74 of the Counterclaim, admits that Clarendon has entered into one other commutation agreement with Trustmark (among others) the terms of which speak for themselves, and that in connection with that agreement Clarendon and Trustmark signed a without prejudice side letter agreement the terms of which also speak for themselves, and Clarendon denies any allegations inconsistent with the terms of that

commutation agreement and/or side letter agreement.  Clarendon further admits that it never asserted during the negotiation of the commutation agreement that Trustmark was in breach of the Big I Program Commutation.  Clarendon denies any remaining allegations of paragraph 74.

### The 1998 ACP Program Commutation

75.     In response to paragraph 75 of the Counterclaim, admits that Trustmark and multiple other companies reinsured Clarendon (and each other) with respect to the 1998 ACP Program.

76.     In response to paragraph 76 of the Counterclaim, admits that Clarendon and several of its reinsurers, including Trustmark, agreed to fully and finally commute all of their liabilities with respect to the 1998 ACP Program and that such commutation agreement was reduced to a final written document, which Trustmark has not attached to the Counterclaim or filed with the Court.

77.     In response to paragraph 77 of the Counterclaim, denies.

78.     In response to paragraph 78 of the Counterclaim, denies.

79.     In response to paragraph 79 of the Counterclaim, admits.

80.     In response to paragraph 80 of the Counterclaim, responds that the 1998 ACP Program Commutation is a written document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of that agreement.

### The 1998 ACP Program Side Letter

81.     In response to paragraph 81 of the Counterclaim, states that the 1998 ACP Program Side Letter speaks for itself, denies Trustmark's characterization of it, and denies all other allegations in paragraph 81.

82.    In response to paragraph 82 of the Counterclaim, states that the 1998 ACP Program Side Letter speaks for itself and denies any allegations inconsistent with the terms of the agreement.

83.    In response to paragraph 83 of the Counterclaim, admits that the 1998 ACP Program Commutation called for Trustmark to pay $426,204.88 within 5 days from execution of the agreement without the right of offset.  Clarendon denies the remaining allegations of paragraph 83.

84.    In response to paragraph 84 of the Counterclaim, denies.

85.    In response to paragraph 85 of the Counterclaim, admits that Clarendon and Trustmark signed a side letter agreement that is dated July 3, 2007, the terms of which speak for themselves, and denies any allegations inconsistent with the terms of the side letter.

86.    In response to paragraph 86 of the Counterclaim, responds that the "without prejudice" 1998 ACP Side Letter is a written document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the "without prejudice" side letter agreement.  Clarendon further admits that Clarendon and Trustmark agreed in the "without prejudice" 1998 ACP Side Letter that their respective payments would be made by offset.  Clarendon denies that it was agreed that Trustmark would not owe interest, particularly in the event that Trustmark refused to credit Clarendon with the amount to be offset, and denies any remaining allegations of paragraph 86.

87.    In response to paragraph 87 of the Counterclaim, states that the 1998 ACP Side Letter speaks for itself and denies any allegations inconsistent with the terms of the agreement.

88.    In response to paragraph 88 of the Counterclaim, responds that the "without prejudice" 1998 ACP Side Letter is a written document, the terms of which speak for themselves and denies any allegations inconsistent with the terms of the "without prejudice" side letter agreement.  Clarendon further responds that the payments to be made by Clarendon

were expressly "without prejudice" and subject to a full reservation of any and all of Clarendon's rights.

89.     In response to paragraph 89 of the Counterclaim, denies.

90.     In response to paragraph 90 of the Counterclaim, denies.

91.     In response to paragraph 91 of the Counterclaim, denies.

**Trustmark and Clarendon Agree to a Final and Binding Allocation of Clarendon's Payments to Trustmark**

92.     In response to paragraph 92 of the Counterclaim, agrees that Clarendon and Trustmark agreed that the Clarendon's "without prejudice" payments to Trustmark would be allocated to specific claims to be identified by the parties – also on a "without prejudice" basis – in order to facilitate Clarendon's interim billing of the without prejudice payments to its retrocessionaires, but denies any allegations inconsistent with this response.

93.     In response to paragraph 93 of the Counterclaim, agrees that Clarendon and Trustmark agreed that the Clarendon's "without prejudice" payments to Trustmark would be allocated to specific claims to be identified by the parties – also on a without prejudice basis – in order to facilitate Clarendon's interim billing of the without prejudice payments to its retrocessionaires, but denies any allegations inconsistent with this response.

94.     In response to paragraph 94 of the Counterclaim, admits that Trustmark has purported to cede to the 1998 VQS and the 1998 International Treaties claims from several reinsureds.  Clarendon further responds that one of the accounts that Trustmark has purported to cede to both the 1998 VQS and the 1998 International Treaties was a reinsurance of Security Insurance Company of Hartford for its participation on the reinsurance of the TIG Insurance Company's workers' compensation account.  Clarendon denies the remaining allegations of paragraph 94.

95.     In response to paragraph 95 of the Counterclaim, admits that in connection with discussions over which claims would be deemed paid by Clarendon on a without prejudice

basis in connection with the without prejudice offsets, Clarendon asked that TIG claims be excluded.

96.     In response to paragraph 96 of the Counterclaim, denies.

97.     In response to paragraph 97 of the Counterclaim, denies.

98.     In response to paragraph 98 of the Counterclaim, admits that Trustmark sent an email to Clarendon on May 26, 2006, but denies that Trustmark's email is a "confirmation of the Treaty-Level Allocation." Clarendon further admits that the email contains a proposed allocation of the offsets on a claim-by-claim level. Clarendon further states that the proposed allocation was on a "without prejudice" basis and denies any remaining allegations of paragraph 98.

99.     In response to paragraph 99 of the Counterclaim, states that the May 26, 2006 email speaks for itself and denies any allegations inconsistent with the terms of the email.

100.    In response to paragraph 100 of the Counterclaim, admits that Clarendon sent Trustmark an email dated March 21, 2007, the terms of which speak for themselves. Clarendon further responds that its email sets forth its acknowledgement of the interim, without prejudice claim-by-claim allocation and admits that this claim-by-claim allocation changed the amounts as they were allocated in the without prejudice 1999 ACP/Hallmark Side Letter, and denies any allegations inconsistent with this response.

101.    In response to paragraph 101 of the Counterclaim, denies.

102.    In response to paragraph 102 of the Counterclaim, denies.

**The International II Arbitration**

103.    In response to paragraph 103 of the Counterclaim, admits that Clarendon and Trustmark were parties to an arbitration hearing held in Chicago in the summer of 2008 during which Trustmark acknowledged several of the offsets due Clarendon. Clarendon denies that Trustmark "mistakenly" credited Clarendon for any undue amounts. Clarendon further states

the referenced Treaty-Level Allocation was agreed on a "without prejudice" basis, and denies all other allegations of paragraph 103.

104.    In response to paragraph 104 of the Counterclaim, admits that the arbitrators issued an initial Award in Clarendon's favor on October 15, 2008, the terms of which speak for themselves and denies any allegation inconsistent with the terms of the initial Award.

105.    In response to paragraph 105 of the Counterclaim, admits that Trustmark sent a Revised Billing to Clarendon on November 7, 2008, but denies that the Revised Billing was reflected the terms of the initial Award.

106.    In response to paragraph 106 of the Counterclaim, admits that the Revised Billing provided Clarendon with credit for $3,823,952.78 on the International II, but denies that this was consistent with the commutation and offset agreements entered into by the parties.

107.    In response to paragraph 107 of the Counterclaim, admits that Clarendon and Trustmark did not reach agreement on Trustmark's Revised Billing, leading to further briefing and argument before the Panel.

108.    In response to paragraph 108 of the Counterclaim, admits that Clarendon and Trustmark had disagreements over several matters relating to Trustmark's Revised Billing. Clarendon further responds that the arguments raised by the parties are set forth in their submissions to the arbitrators and speak for themselves and denies any allegations inconsistent with the terms of those submissions.  Clarendon further denies that it breached any agreement between the parties.

109.    In response to paragraph 109 of the Counterclaim, responds that the arguments raised by the parties are set forth in their submissions to the arbitrators and speak for themselves and denies any allegations inconsistent with those submissions.

110.    In response to paragraph 110 of the Counterclaim, responds that the arguments raised by the parties are set forth in their submissions to the arbitrators and speak for themselves and denies any allegations inconsistent with those submissions.

111.    In response to paragraph 111 of the Counterclaim, denies that Clarendon breached any agreement between the parties, but admits that Trustmark provided a billing that gave no offset credit to Clarendon.  Clarendon denies that Trustmark argued that Clarendon was not entitled to any offsets, responding further that Trustmark argued that the offsets were not within the jurisdiction of the Panel.

112.    In response to paragraph 112 of the Counterclaim, responds that the transcript of that hearing speaks for itself and Trustmark has omitted various portions of the transcript in paragraph 112.  Clarendon further denies any allegations inconsistent with the complete transcript.

### The Panel's Second Corrected Final Award

113.    In response to paragraph 113 of the Counterclaim, admits.

114.    In response to paragraph 114 of the Counterclaim, admits that the parties disputed the applicability and amount of pre-judgment interest, responding further that the arguments raised by the parties are set forth in their submissions to the arbitrators and speak for themselves and Clarendon denies any allegations inconsistent with those submissions.

115.    In response to paragraph 115 of the Counterclaim, admits that the Panel awarded Trustmark $1,339,470 in interest on return premium.  Clarendon responds further that the Panel denied Trustmark any interest on paid claims.

116.    In response to paragraph 116 of the Counterclaim, denies that the Panel adopted Trustmark's billing.  Clarendon further states that the Panel declined to rule on any offset issues, but did confirm that Clarendon would not have to pay post-judgment interest so

long as the final amount awarded was "paid or otherwise satisfied within thirty days" of the Second Corrected Final Award.

**Clarendon's Second Breach of the Treaty-Level Allocation**

117.    In response to paragraph 117 of the Counterclaim, admits that by letter dated April 6, 2009, Clarendon informed Trustmark of Clarendon's satisfaction of the Second Corrected Final Award by offset, but denies all other allegations.

118.    In response to paragraph 118 of the Counterclaim, admits that Trustmark purported to reject Clarendon's exercise of its offset rights, but denies that Trustmark's nonsensical rejection was valid.

**COUNT I**

**(Breach of Contract)**

119.    In response to paragraph 119 of the Counterclaim, denies.

120.    In response to paragraph 120 of the Counterclaim, denies.

121.    In response to paragraph 121 of the Counterclaim, denies.

122.    In response to paragraph 122 of the Counterclaim, denies.

123.    In response to paragraph 123 of the Counterclaim, denies.

**COUNT II**

**(Declaratory Judgment)**

124.    In response to paragraph 124 of the Counterclaim, admits.

125.    In response to paragraph 125 of the Counterclaim, denies Trustmark's characterization of Clarendon's claims in this case.

126.    In response to paragraph 126 of the Counterclaim, denies Trustmark's characterization of the side letter agreements and the MELEX commutation agreement, which Trustmark has breached, and denies all other allegations in paragraph 126.

127.    In response to paragraph 127 of the Counterclaim, admits that the 1999 ACP Allocation Agreement was a without prejudice payment of claims, responding further that the 1999 ACP payments by Trustmark in 2003 reduced the amount it was required to pay under the 1999 ACP Commutation, and denies all other allegations in paragraph 127.

128.    In response to paragraph 128 of the Counterclaim, denies.

## AFFIRMATIVE DEFENSES

1.    The Counterclaim is barred by the doctrines of waiver and estoppel.

2.    The Counterclaim fails to state a claim on which relief can be granted.

3.    Trustmark has suffered no damages or, in the alternative, has failed to mitigate its damages.

4.    Trustmark's claims are barred by the doctrine of unclean hands.

5.    Trustmark's claims are barred by its material breach and/or repudiation of the contracts.

WHEREFORE, Clarendon demands that the Court enter judgment (1) dismissing Trustmark's Counterclaim in its entirety; (2) denying Trustmark's requests for any and all damages, declaratory relief, attorneys' fees and costs, and any other relief; and (3) granting Clarendon any other relief that the Court finds to be equitable and just.

Dated:  September 27, 2010                    FOLEY & LARDNER LLP

_s/ Brian P. Keenan_____
Robert A. Scher, Esq.
90 Park Avenue
New York, New York 10016-1314
Tel:  212-338-3405
Fax:  212-687-2329

Brett H. Ludwig, Esq. (pro hac vice)
Brian P. Keenan, Esq. (pro hac vice)
Foley & Lardner LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel: 414-271-2400
Fax: 414-297-4900

*Attorneys for Plaintiffs*
*CLARENDON NATIONAL INSURANCE*
*COMPANY and CLARENDON AMERICA*
*INSURANCE COMPANY*

## CERTIFICATE OF SERVICE

This certifies that I caused Clarendon's Answer to Trustmark's Counterclaims to be served on the parties listed below via filing with the Court's ECF System and by electronic mail this 27th day of September, 2010.

| | |
|---|---|
| Everett J. Cygal | Brian J. Neff |
| David M. Spector | SCHIFF HARDIN LLP |
| Robert C. Feldmeier | 900 Third Avenue |
| Colin M. Proksel | Twenty-Third Floor |
| SCHIFF HARDIN LLP | New York, NY 10022 |
| 6600 Sears Tower | |
| Chicago, IL 60606 | |

　s/ Brian P. Keenan　　　　　　　　　
Robert A. Scher, Esq.
90 Park Avenue
New York, New York 10016-1314
Tel:  212-338-3405
Fax:  212-687-2329

Brett H. Ludwig, Esq.
Brian P. Keenan, Esq.
Foley & Lardner LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel: 414-271-2400
Fax: 414-297-4900

*Attorneys for Plaintiffs*
*CLARENDON NATIONAL INSURANCE*
*COMPANY and CLARENDON AMERICA*
*INSURANCE COMPANY*