**ENDORSED ORDER**

Defendant's various applications regarding an email inadvertently produced by plaintiff are frivolous. First, the email plainly is covered by the attorney-client privilege, as it contains legal advice based on the attorney's assessment of the effect of various agreements between the parties. Second, plaintiff, having disclosed the document, consented to defendant's use of it in this lawsuit with only one minor deletion (the Exhibit B version), thus giving defendant the benefit of the legal advice and seeking to delete only one minor segment that is without substance although technically part of a privileged communication. Third, the substance of the advice — which plaintiff consented to have defendant use — simply confirms the known and documented position that plaintiff took in determining offsets. Fourth, given the volume of production, the disclosure of this one document despite its privileged status cannot be deemed a waiver of any sort, and in any event — as noted — plaintiff has consented to its use with one minor redaction. Fifth, these circumstances do not remotely justify subject-matter waiver of any sort. Sixth, defendant utterly fails to justify an evidentiary in camera review or any reopening of discovery.

M. [signature]  10/19/10

# SCHIFF HARDIN LLP

233 SOUTH WACKER DRIVE
SUITE 6600
CHICAGO, ILLINOIS 60606

t 312.258.5500
f 312.258.5600

www.schiffhardin.com

Everett J. Cygal
312-258-5783
ecygal@schiffhardin.com

October 18, 2010

**VIA FACSIMILE**

Hon. Michael H. Dolinger
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 17D
New York, NY 10007-1312

Re:   Clarendon Nat'l Ins. Co. v. Trustmark Ins. Co., No. 09 cv 9896 (BSJ) (MHD)

Dear Magistrate Judge Dolinger:

We write in reply to Clarendon's October 15, 2010 letter. To the extent the Court is interested in oral argument on this matter pursuant to 2.D of Your Honor's Individual Practices, Trustmark is prepared to appear for an in-person hearing.

In brief, Trustmark is entitled to the relief sought in its October 8 letter because Clarendon's careless production has exposed the fact that the February 7, 2006 e-mail is either not privileged, or if it is, Clarendon waived the privilege with respect to the e-mail and thereby waived the privilege on all Clarendon documents dealing with the same subject matter. Critically, in its October 15 letter and attached affidavit, Clarendon never addresses the key issue of whether the disclosures of the e-mail were, in fact, inadvertent. Because Clarendon has not carried its burden, this Court has no basis to find other than the disclosures were intentional.

The e-mail completely undermines Clarendon's key claim in this case: that the phrase "without prejudice" provides Clarendon with omnipotent power over Trustmark. Specifically, relying on a 97-year-old New York landlord/tenant case, Clarendon asserts that it could unilaterally apply the offsets against any debt that it owes Trustmark, regardless of the Treaty Level Allocation or the Side Letters terms. In short, nothing was binding and Trustmark could do nothing about it. Mr. Kaas's e-mail instruction to Mr. Mahadeo, however, proves otherwise for if Clarendon truly believed at the time in the mystical powers of "without prejudice," Mr. Kaas would have not wasted a second ensuring that Mr. Mahadeo did not pay TIG Claims. Along the same lines, it also bears directly on the veracity of Clarendon's witnesses on this issue.

Accordingly, Trustmark has asked this Court to review *in camera* Clarendon's documents marked privileged that relate to the parties' allocations because it is not apparent from Clarendon's privilege log which documents are relevant and material. As is more fully explained in the last section of this letter, this is not a request for a blanket review, as Clarendon misstates. Clarendon Oct. 15, 2010 Letter, pp. 8-9.

CHICAGO | WASHINGTON | NEW YORK | LAKE FOREST | ATLANTA | SAN FRANCISCO | BOSTON

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/19/10



Hon. Michael H. Dolinger
October 18, 2010
Page 2

Rather, it is a limited request that is both within the scope of Clarendon's waiver and a product of the impossibility of Trustmark knowing which documents to bring to the Court's attention.

**The Importance of this Evidence**

Based upon the testimony of Clarendon's witnesses, it is a virtual certainly that Clarendon will attempt to introduce parol evidence to alter the plain meaning of the parties' agreements. To the extent that Clarendon is attempting to offer parol evidence, Trustmark has a right to discover the basis of Clarendon's parol evidence and to impeach it with Clarendon's own contemporaneous documents and actions.

Mr. Kaas's instruction to Mr. Mahadeo "not to allocate any portion of the setoff payments to TIG business" squarely conflicts with Clarendon's witnesses' parol evidence testimony as to the meaning of "without prejudice." Clarendon's position as to "without prejudice" and its use in the Commutations and Side Letters means that any of Clarendon's purported "without prejudice" payments could be clawed back, that Clarendon's payments were not actual, final payments and that Clarendon, without the agreement of Trustmark, could allocate the payments as it sees fit.[1] *See, e.g.,* Fee Dep. Trans. at 35:3-46:4; Redpath Dep. Trans. at 364:14-366:19.

Clarendon is desperate to preserve its definition of "without prejudice" in order to vary key language in the parties' agreements. As Clarendon is well aware, at one time it sought specific language that would have made its various payments retractable:

> In the event that Clarendon's outstanding obligations to Trustmark under the [VQS and International treaties] ultimately prove to be less than the Settlement Amount, (after taking into account, for example, any other setoffs, settlements, or claims made under the [VQS and International treaties]), then *Trustmark agrees to pay Clarendon any shortfall* between the Settlement Amount and the amount ultimately determined to be payable by Clarendon to Trustmark under the [VQS and International treaties].

*See, e.g.,* Dep. Ex. 83 (emphasis added). Trustmark, however, requested that the "agrees to pay" language be removed, and Clarendon agreed. *See, e.g.,* Dep. Exs. 84 & 85. Accordingly, Clarendon changed the language to provide:

---

[1] Clarendon never told its reinsurers that its payments to Trustmark were "without prejudice" and, therefore, not actually payments at all. *See, e.g.,* Mahadeo Dep. Trans. at 173:8-12. Indeed, contrary to Clarendon's position now, Clarendon informed its reinsurers that it had paid balances to Trustmark. Based upon Clarendon's representation, Clarendon's reinsurers reimbursed Clarendon for Clarendon's payments to Trustmark. Mahadeo Dep. Trans. at 107: 3-9; 108:2-10; 181:10-14; 187:17-188:4.



Hon. Michael H. Dolinger
October 18, 2010
Page 3

> ... then *Clarendon shall have a claim against Trustmark for any shortfall* between the Settlement Amount and the amount ultimately determined to be payable by Clarendon to Trustmark under the [VQS and International treaties].

*See, e.g.,* Dep. Ex. 85. Mr. Kaas, Clarendon's primary drafter of the agreements, testified that the "have a claim" language "adds an additional step into the process," such that "if there is a shortfall, based on this language [Clarendon] now ha[s] to claim payment from Trustmark." Kaas Dep. Trans. at 125:2-5. And the time for such a claim is after the forthcoming VQS arbitration: "[I]f there was an arbitration and Clarendon didn't owe anything, I mean, I think at that point [Clarendon] would have a claim against Trustmark." Id., at 126:18-21.[2]

Based on the change in language, Clarendon's Rule 30(b)(6) designee, Mr. Redpath, has admitted that the contractual basis for Clarendon's position on "without prejudice" is not in the parties' agreements, but that it was the "intent" nonetheless. *See, e.g.,* Redpath Dep. Trans. at 364:14-366:19. Mr. Fee has also persisted in relying on parol evidence that "at least in [his] opinion, in the reinsurance industry, the concept of a good faith, without prejudice payment is well understood." Fee. Dep. Trans. at 36:8-10. The February 7, 2006 e-mail demonstrates that this is not the case.

**The Documents Are Not Privileged**

Clarendon contends that the February 7, 2006 e-mail is privileged because "it is a communication from counsel providing information in the course of advising Clarendon on implementation of the parties' settlement agreements and offset arrangements." Id., p. 1; *see also* id., p. 6. But Clarendon's varying redactions and the facts belie such an argument.

First, as relevant, Clarendon has already conceded that the following portion of the February 7, 2006 e-mail from Brian Kaas, one of Clarendon's lawyers, to Alan Mahadeo is not privileged:

> I have attached two emails from Mike Hawksworth providing current claims bordereaux for the '98 VQS and international treaties. I am still waiting to receive a claims bordereaux for the '97 VQS treaty. After you have gone through the reports, we will need to advise Trustmark which claims will be considered paid as a result of the setoffs (keeping in mind not to allocate any portion of the setoff payments to TIG business) and then prepare some type of document to reflect this payment.

Ex. B/Kaas Dep. Ex. 156 (emphasis added) to Trustmark Oct. 8 Letter; Clarendon Oct. 7, 2010 Fax. This means that Mr. Kaas's instruction to Mr. Mahadeo that allegedly communicates legal advice on implementation of the parties' agreements cannot be and is not legal advice subject to a genuine assertion

---

[2] The "claim" language is in some but not all of the Side Letters. For example, there is no similar language in the 1999ACP/Hallmark Side Letter relating to this issue. Based upon Clarendon's admission that another proceeding is necessary <u>after</u> the pending VQS II arbitration, this entire litigation appears to be premature.



Hon. Michael H. Dolinger
October 18, 2010
Page 4

of privilege protection because Clarendon has stated as much. *See* Clarendon Oct. 7, 2010 fax. This begs the question what exactly is Clarendon trying to withhold.

> As relevant, Clarendon has actually only sought to withhold the next two lines from the e-mail:
>
> I would be happy to help out as needed on both of these pieces. Meanwhile please let me know if you need anything else.

*See* Clarendon Oct. 7, 2010 Fax *and compare* Ex. A. *with* Ex. C. Again, there is no legal advice here.

In short, Clarendon's willingness to waive its claim of privilege over Clarendon 0080396, or Exhibit B above, shows that the e-mail is not a privileged communication. It is a business instruction.

Second, even if the above is subject to a claim of privilege, the e-mail is not privileged because the "predominant purpose" is not to convey legal advice. *See, e.g., Clarke v. J.P. Morgan Chase & Co.*, No. 08 Civ. 02400, 2009 WL 970940, at *4 (S.D.N.Y. Apr. 10, 2009); *Boss Mfg. Co. v. Hugo Boss AG*, No. 97 Civ. 8495, 1999 U.S. Dist. LEXIS 987, at *4 (S.D.N.Y. Jan. 28, 1999 (Dolinger, M.J.) ("the provision of predominantly non-legal services would not be covered") (cited by Clarendon); *First Am. Commercial Bancorp, Inc. v. Saatchi & Saatchi Rowland, Inc.*, 868 N.Y.S.2d 425, 426 (N.Y. App. Div. 2008) (applying "primarily or predominantly" test (citing *Rossi v. Blue Cross*, 73 N.Y.2d 588, 594, 540 N.E.2d 703 (1989))) (cited by Clarendon); *Stenovich v. Wachtell, Lipton, Rosen & Katz*, 756 N.Y.S.2d 367, 376 (N.Y. Sup. Ct. 2003) (advice must be "predominantly legal," but "privilege does not extend to business advice, even if provided by an attorney") (cited by Clarendon).

On its face, there is no legal advice contained in the e-mail. The e-mail merely forwards two emails from Mike Hawksworth of Trustmark to Mr. Mahadeo in order for Mr. Mahadeo to allocate payments to claims. The e-mail itself does not reference legal negotiations or interpretations. The evident predominant purpose is solely to provide Mr. Mahadeo business information to make business decisions that would then be communicated to Trustmark. *See Park Ave. Bank, N.A., v. Bankasi*, No. 93 CIV. 1483, 1994 WL 722690, at *1 (S.D.N.Y. Dec. 30, 1994) (communications regarding attorney's advice or decision not to fulfill a company's agreement constitutes business, not legal, advice).

Finally, Mr. Kaas himself stated that he did not know Clarendon's issues or reservations regarding TIG. Clarendon Oct. 15, 2010 Letter, pp. 4-5 (citing Kaas Dep. Trans at 88 & 90). It strains credulity for Mr. Kaas now to say that he was giving legal advice on a topic that he previously testified he was unaware of under oath. Id. Consequently, Mr. Kaas could not have been relaying implicit legal advice in the e-mail. Mr. Kaas's after-the-fact and conclusory affidavit cannot change the nature of the e-mail at the time it was sent.

**If The Documents Are Privileged, Clarendon Has Waived The Privilege**

Even if the privilege were applicable, Clarendon's careless production constitutes waiver. Tellingly, Clarendon only states that it sought return of the fully unredacted February 7, 2006 e-mail and that "[t]his is sufficient to satisfy Federal Rule of Evidence 502[]". Id., pp. 7-8. A reasonable inference,



Hon. Michael H. Dolinger
October 18, 2010
Page 5

based on Clarendon's lack of explanation by letter or affidavit, is that the disclosures of the e-mail were intentional.

Under Federal Rule of Evidence 502, inadvertent disclosure affects waiver if "reasonable steps" were not taken "to prevent disclosure" and "to rectify the error." Fed. R. Evid. 502(b)(2) & (3); *see also Clarke*, 2009 WL 970940, at *5; *AFA Protective Systems, Inc. v. City of New York*, 788 N.Y.S.2d 128, 129-30 (N.Y. App. Div. 2004). The law is clear—Clarendon needs to explain in detail, under oath if necessary, the reasonable precautions that it took to protect this e-mail. Clarendon's own authority relies on the fact that the party asserting an inadvertent disclosure "submitted a sworn affidavit from counsel, attesting to the nature of the precautions taken by [the party] in screening documents for privilege." *Fuller v. Interview, Inc.*, No. 07 Civ. 5728, 2009 WL 3241542, at *4 (S.D.N.Y. Sept. 30, 2009). Clarendon has had the opportunity to do so and did not.

Furthermore, the absence of any justification for the above suggests that Clarendon intended originally for the e-mails at issue to be produced. First, Clarendon completely fails to inform the Court what steps it took to maintain the privilege, other than requesting that one (1) document be returned. This is the exact bare minimum of effort that any party could undertake here. And Clarendon does not dispute that it did not undertake either a simple word or date search to identify any other versions or copies of the February 7, 2006 e-mail. Second, Clarendon also makes no attempt to explain the varying redactions.

In general, "a party's failure to respond to an opposing party's argument implies concession." *MCI WorldCom Network Servs., Inc. v. Atlas Excavating, Inc.*, No. 02 C 4394, 2006 WL 3542332, at *3 (N.D. Ill. Dec. 6, 2006) (citing cases). *Compare Law v. Medco Research, Inc.*, 113 F.3d 781, 787 (7th Cir. 1997) ("Failure to contest a point is not necessarily a waiver, but it is a risky tactic, and sometimes fatal." (citing cases)).

### A Finding of Subject Matter Waiver is Appropriate

Clarendon asserts that subject matter waiver only applies when a party places its counsel's legal advice "at issue." Clarendon Oct. 15, 2010 Letter, p. 8. This is a clear mischaracterization of subject matter waiver.

Once waiver has been shown, the rule is that the waiver works as a waiver of all claimed privileged materials on the same subject matter. *See, e.g.*, 1 Edna S. Epstein, The Attorney-Client Privilege and the Work-Product Doctrine 584 (ABA 2007) ("As a general rule, waiver of the privilege with regard to some communications waives the privilege as to all other communications relating to the same subject matter only."); *see also AMBAC Indem. Corp. v. Bankers Trust Co.*, 573 N.Y.S.2d 204, 208 (N.Y. Sup. Ct. 1991) ("[V]oluntary disclosure of the content of a privileged communication constitutes a waiver of the privilege as to all other communications on the same subject." (citation omitted)). Clarendon's authority also recognizes this principle. *See Stenovich*, 756 N.Y.S.2d at 378 ("Waiver of the attorney-client privilege normally compels the production of other documents protected by the privilege which relate to the same subject." (citing New York law)).



Hon. Michael H. Dolinger
October 18, 2010
Page 6

Furthermore, Clarendon has put Mr. Kaas's advice "at issue." As Clarendon notes, "at issue" waiver occurs where "a party affirmatively places the subject matter of its own privileged communications at issue in litigation, so that invasion of the privilege is required to determine the validly of a claim or defense of the party asserting the privilege, and application of privilege would deprive the adversary of vital information." Clarendon Oct. 15, 2010 Letter, p. 8 (quoting and citing cases). As described above, Clarendon's alleged concerns about paying TIG business are incompatible with its position on "without prejudice." Among other things, Clarendon maintains that "without prejudice" means that it can unilaterally apply the offsets against any debt that it owes Trustmark regardless of the Treaty Level Allocation or the terms of the Side Letters. In short, unless Clarendon prevails as to "without prejudice," its Complaint fails. Accordingly, a finding of subject matter waiver is necessary to examine the veracity of Clarendon's claims, witnesses, and assertions. The information is also vital to Trustmark's defenses.

### *In Camera* Review Is Necessary

Clarendon's claim that "there is no reason for this Court to conduct a wholesale review of Clarendon privilege documents" is correct. Clarendon Oct. 15, 2010 Letter, p. 2. Trustmark never asked for one. According to Clarendon, though, "Trustmark, without authority, asks this Court to conduct an in camera review of Clarendon's privilege documents" in a so-called "blanket manner." Id., p. 8. That is an obvious mischaracterization of Trustmark's request.

In general, in the Second Circuit, "[m]aking an *in camera* submission of materials that counsel contends are privileged is 'a practice both long-standing and routine in cases involving claims of privilege.'" *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184 (2d Cir. 2007) (quoting *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003)).

Clarendon's authority also supports *in camera* review. In *Stenovich v. Wachtell, Lipton, Rosen & Katz*, the court conducted an *in camera* review to determine whether certain documents were "primarily of a legal character." *Stenovich*, 756 N.Y.S.2d at 377. And in *Boss Mfg. Co. v. Hugo Boss AG*, this Court also conducted an *in camera* review to determine whether counsel's role in the documents at issue was legal or commercial in nature. *Boss*, 1999 U.S. Dist. LEXIS 987, at *1 & *4-5.

But Clarendon's reliance on *United States v. Zolin* is misplaced. In *Zolin*, the threshold showing "of a factual basis adequate to support a good faith belief by a reasonable person" for *in camera* review is specific to the applicability of the crime-fraud exception to the attorney-client privilege. *United States v. Zolin*, 491 U.S. 554, 570-72 (1989) ("We turn to the question whether *in camera* review *at the behest of the party asserting the crime-fraud exception* is always permissible, or, in contrast, whether the party seeking *in camera* review must make some threshold showing that such review is appropriate." (emphasis added)). Moreover, among the *Zolin* Court's concerns was the fact that an *in camera* review could be a burden on courts "which may well be required to evaluate large evidentiary records without open adversarial guidance by the parties." Id. at 571.

In this case, Trustmark specifically requests that the Court require Clarendon to submit any documents listed on its privilege log related to TIG or the Treaty Level Allocation or the claim-by-claim



Hon. Michael H. Dolinger
October 18, 2010
Page 7

allocation of the offsets for an *in camera* review. As described, these e-mails are in question. At the moment, only one (1) document on Clarendon's privilege log (CL-PRIV010478-79 – "Clarendon - Trustmark premium as ceded by inwards contract as of 3/31/05 billing - excluding TIG with Attorney Kaas's handwritten notes") reflects that it relates to TIG. Consequently, Trustmark cannot provide the Court with further guidance. This should not be considered a lack of guidance, as Clarendon claims.

Such an *in camera* review is necessary, whether or not the February 7, 2006 e-mail is privileged. If it is not privileged, an *in camera* is necessary because of Clarendon's aggressive and expansive use of the privilege as a means to withhold highly relevant and discoverable material. If it is privileged, the privilege has been waived as to the subject matter and only the Court is in a position to determine what, if any, other documents are subject to this waiver.

Therefore, Trustmark respectfully requests that this Court (1) rule that Clarendon has waived its claim of privilege with respect to Clarendon 0042903 (Ex. A) and also Clarendon 0021195 (Ex. C) and Clarendon 0080396 (Ex. B); (2) find a subject matter waiver on this issue; (3) require the *in camera* review described above; and (4) grant Trustmark an additional three hours of deposition time with Messrs. Fee, Redpath, Kaas and Mahadeo after Clarendon produces all e-mails relating to TIG or the Treaty Level Allocation or the claim-by-claim allocation of the offsets.

Trustmark is grateful to the Court for its attention.

Respectfully submitted,

Everett J. Cygal

Attachments
cc:    Counsel of Record
CH2\9225427.1