Robert A. Scher, Esq.
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
Tel: 212-682-7474
Fax: 212-687-2329

Brett H. Ludwig, Esq. (pro hac vice)
G. Michael Halfenger, Esq. (pro hac vice)
Brian P. Keenan, Esq. (pro hac vice)
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, Wisconsin  53202
Tel:  414-271-2400
Fax:  414-297-4900

*Attorneys for Plaintiffs and Counter-Defendants
Clarendon National Insurance Company and
Clarendon America Insurance Company*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | |
|---|---|
| CLARENDON NATIONAL INSURANCE COMPANY and CLARENDON AMERICA INSURANCE COMPANY, | : : : : |
| *Plaintiffs and Counter-Defendants*, | : Civil Action No. 09-cv-9896 |
| v. | : : |
| TRUSTMARK INSURANCE COMPANY, | : : |
| *Defendant and Counter-Plaintiff.* | |

-----------------------------------------------------------------x

**CLARENDON'S REPLY MEMORANDUM OF LAW IN
<u>SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

I. THE COURT SHOULD DISREGARD TRUSTMARK'S ATTACKS ON CLARENDON'S GENERAL COUNSEL. ..................................................................1

II. TRUSTMARK CANNOT EXCUSE ITS BREACH BY REWRITING THE OFFSET AGREEMENTS. ......................................................................................3

    A. Clarendon Has Complied with the Offset Agreements........................................3

    B. Trustmark Ignores that the Offset Payments Were "Without Prejudice" and Subject to a Complete Reservation of Clarendon's Rights. .....................................................................................................................4

    C. Trustmark Cannot Escape its Having Agreed that the Offset Payments Were "Without Prejudice."..................................................................5

    D. Even if Clarendon Had Breached the Offset Agreements, Trustmark Could Not Avoid the Payments it Promised. ...................................7

III. CLARENDON'S CLAIMS HAVE NOT BEEN ADJUDICATED...............................8

IV. TRUSTMARK'S OTHER CHALLENGES TO CLARENDON'S DECLARATORY JUDGMENT CLAIM ARE MERITLESS. ...................................9

CONCLUSION.....................................................................................................................10

CERTIFICATE OF SERVICE .............................................................................................11

# **TABLE OF AUTHORITIES**

**CASES**

*Cabrera v. First Nat'l Bank of Wheaton*,
   753 N.E.2d 1138 (Ill. Ct. App. 2001) ........................................................................ 9

*Castano v. Gabriel*,
   302 N.Y.S.2d 943 (N.Y. Civ. Ct. 1969) ..................................................................... 5

*D&B Enterprises No. 2 v. Cablam Inc.*,
   729 N.Y.S.2d 239 (N.Y. App. Term 2001) ................................................................ 9

*Dowling v. Hastings*,
   105 N.E. 194 (N.Y. 1914) ......................................................................................... 9

*Hinton v. Bogart*,
   140 N.Y.S. 111 (N.Y. App. Term 1913) ................................................................. 5-6

*Jenoure v. Body Solutions Plus, LLC of Westbury*,
   --- N.Y.S.2d ----, 29 Misc. 3d 84 (N.Y. App. Term. 2010) ........................................ 7

*JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*,
   893 N.Y.S.2d 237 (N.Y. App. Div. 2010) .................................................................. 7

*JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*,
   209 F.R.D. 361 (S.D.N.Y. 2002) .............................................................................. 2

*Katel Ltd. Liabilty Co. v. AT&T Corp.*,
   607 F.3d 60 (2d Cir. 2010) ....................................................................................... 6

*Lew Morris Demolition Co., Inc. v. Bd. of Educ.*,
   355 N.E.2d 369 (N.Y. 1976) ..................................................................................... 6

*Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*,
   67 F. Supp. 2d 293 (S.D.N.Y. 1999) ......................................................................... 6

*Strasbourger v. Leerburger*,
   134 N.E. 834 (N.Y. 1922) ......................................................................................... 7

*Svenska Taendsticks Fabrik Aktiebolaget v. Bankers Trust Co.*,
   196 N.E. 748 (N.Y. 1935) ......................................................................................... 5

*Trabucco v. Sanpaolo*,
   695 F. Supp. 2d. 98 (S.D.N.Y. 2010) ........................................................................ 2

*Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*,
   No. 09 C 1673, 2009 WL 4043110 (N.D. Ill. Nov. 20, 2009) .................................... 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a) ........................................................................................................... 6

Fed. R. Civ. P. 37(c)(1) ...................................................................................................... 6

Federal Rule of Evidence 408 ............................................................................................ 6

**INTRODUCTION**

Plaintiffs Clarendon National Insurance Company and Clarendon America Insurance Company (collectively "Clarendon") seek to enforce Defendant Trustmark Insurance Company's ("Trustmark's") unfulfilled promises to pay Clarendon $10.1 million under multiple settlement and commutation agreements (the "Settlement Agreements").  In opposing Clarendon's summary judgment motion, Trustmark does not challenge the fact that it promised to pay Clarendon the $10.1 million.  Nor does Trustmark contend that it has satisfied its payment obligations -- Trustmark has undisputedly withdrawn the credits that had been its means of satisfying its debts and has also refused affirmative to pay Clarendon.

Instead of addressing these dispositive facts, Trustmark resorts to attacks on Clarendon's witnesses and to mischaracterizations of the record.  Because the dispositive facts are undisputed, Clarendon is entitled to summary judgment on all six counts of its complaint and on both counts of Trustmark's counterclaim.[1]

**I.      THE COURT SHOULD DISREGARD TRUSTMARK'S
        ATTACKS ON CLARENDON'S GENERAL COUNSEL.**

Trustmark begins its opposition by attacking the declaration of Clarendon's General Counsel, Robert Redpath.  Trustmark accuses Mr. Redpath of "changing his story" on when Trustmark repudiated the parties' the offset agreements. (Trustmark Opposition at 3-6).  As a preliminary matter, the Trustmark conduct on which Clarendon bases its breach claims is undisputed.  In a February 4, 2009 letter, Trustmark expressly withdrew all offset credits due Clarendon under the Settlement Agreements. (Redpath Nov. 19, 2010 Decl. Ex. 93 [Docket No. 67] ("Redpath Decl.")  Trustmark later

---

[1] Trustmark's opposition does not address Clarendon's summary judgment arguments on Trustmark's counterclaims.  Clarendon will not therefore address them further in this reply.

1

reiterated its refusal to pay Clarendon by offset in an April 17, 2009 letter.  (*Id.* Ex. 95.) Either or both of these is a breach – the selection of one or the other is immaterial.

Trustmark nevertheless attacks Mr. Redpath for allegedly identifying only the April 17, 2009 letter as a breach during his deposition.  This assertion is incorrect.  In his deposition, Mr. Redpath testified that Trustmark repudiated the offset agreement in both its February 4, 2009 letter and *again* in the April 17, 2009 letter.  When asked when the repudiation occurred, Mr. Redpath answered that Trustmark "formally repudiated its offset, I recollect by *letter*, and also after the second award was handed out."  (Lester Aff. Ex. 7, Redpath Dep. at 7-8) (emphasis added).  He also characterized Trustmark's February 4, 2009 letter as "at least in part, a repudiation," and told Trustmark's counsel that Trustmark "breached its deal at the time of [the February 4, 2009] letter" because the letter "is basically saying an intent not to offset."  (*Id.* at 272.)  This is consistent with Clarendon's legal position and his declaration.

Even if Mr. Redpath had a different recollection at his deposition, it would not affect Clarendon's motion.  As noted above, the facts of Trustmark's removal of the offsets from its billings and it rejection of Clarendon's offset efforts are not disputed.  Whether that conduct constitutes a breach is a legal question for the court, not a factual question for a witness at deposition.  *See JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002) (holding that issue of whether a breach of a contract occurred is a legal conclusion); *Trabucco v. Sanpaolo*, 695 F. Supp. 2d. 98, 106 (S.D.N.Y. 2010) (same).  Mr. Redpath's declaration simply recites the facts.  Therefore, even if Mr. Redpath had testified that one or both of the letters was not a breach (he actually said both were) it would be of no legal significance to Clarendon's motion.

## II.     TRUSTMARK CANNOT EXCUSE ITS BREACH BY REWRITING THE OFFSET AGREEMENTS.

Trustmark's main defense to summary judgment is its claim that it was entitled to withdraw all offset credits, and will never have to pay Clarendon under the Settlement Agreements, because Clarendon allegedly breached what Trustmark calls the "Allocation Agreement." (Trustmark Opposition at 8.)  According to Trustmark, Clarendon breached when it submitted a January 28, 2009 letter to the arbitrators, asserting its right to apply the offset credits against the amount Clarendon was finally determined to owe Trustmark under the 1998 International Treaties.  (*Id.*)  For purposes of summary judgment, neither the parties' agreements nor the parties' conduct is disputed.  Together, they defeat Trustmark's assertion that Clarendon breached.

### A.     Clarendon Has Complied with the Offset Agreements.

Pursuant to the unambiguous terms of the three side letter agreements (the "Side Letters") and in Section I of the MELEX Settlement Agreement, the parties agreed that Trustmark would satisfy its Settlement Agreement obligations by offset.  The MELEX Settlement Agreement provides that Trustmark's payments were to "be offset against a like amount payable or claimed to be payable, by Clarendon to Trustmark under the [1998 International and VQS] Treaties."  Redpath Decl. Ex. 35.)  The Side Letters each provide that Clarendon would make payments "for balances payable, or claimed to be payable" to Trustmark under the 1998 International and VQS Treaties and that these payments would "take the form of an offset against the amount payable by Trustmark to Clarendon under the Settlement Agreement."  (*Id.* Exs. 26, 37, & 39.)  Trustmark has not satisfied its obligations because it has affirmatively removed all credit for Clarendon's offset payments to it.

3

The content of Clarendon's January 28, 2009 letter to the arbitrators, on which Trustmark bases its breach claim, is also undisputed. Consistent with the Side Letters and the MELEX Settlement Agreement, Clarendon sought to apply the offsets to "like amounts" finally determined to be "payable" to Trustmark under the 1998 International Treaties. Clarendon merely argued that it was entitled to "satisfy the final resulting award with any or all" of the offsets. (Redpath Decl. Ex. 92.) This is not a breach, but is consistent with the offset agreements.

**B.  Trustmark Ignores that the Offset Payments Were "Without Prejudice" and Subject to a Complete Reservation of Clarendon's Rights.**

Trustmark's breach theory depends on the distortion of an additional sentence in the offset agreements. In all four offset agreements, the parties also agreed that they would "work together in good faith" to agree upon specific claims that would "be *deemed* paid by Clarendon" under the 1998 VQS and International Treaties. (Redpath Decl. Exs. 26, 35, 37, & 39) (italics added). The purpose of this provision was to "enable Clarendon to properly bill its outbound reinsurers" for the offsets. (*Id.*) In March 2007, the parties identified 9,366 individual claims that they would deem as paid by offset. The selection of these claims resulted in $3,823,952.78 of the offsets being deemed to apply to Clarendon's disputed obligations under the 1998 International Treaties. The other claims fell under other treaties, and some of the $10.1 million was never deemed to apply toward any specific claims. (*Id.* Ex. 41.)

Trustmark contends that by deeming these claims as paid, Clarendon was forever and finally bound to pay Trustmark $3,823,952.78 under the International Treaties. That is not what the agreements say. For the sole purpose of allowing Clarendon to report the offset payments to its outbound reinsurers, the parties "deemed"

4

these claims paid.  Clarendon was not agreeing that these claims were finally paid.  To the contrary, the Side Letters and the MELEX Settlement Agreement expressly provide that the offset payments would be "without prejudice and subject to a full reservation of any all rights, remedies or defenses either party may have" and would "not constitute an admission, ratification or waiver."  (Redpath Decl. Exs. 26, 35, 37, & 39.)  Having expressly reserved its rights to challenge all of Trustmark's claims, Clarendon cannot be held to have bound itself to pay the claims that were simply deemed paid.[2]

### C. Trustmark Cannot Escape its Having Agreed that the Offset Payments Were "Without Prejudice."

Trustmark spends 10 of the 25 pages in its opposition (pp. 12-22) trying to re-write the offset agreements to transform the claims the parties "deemed" as paid into final and binding payments.  Ironically, Trustmark accuses Clarendon of "abusing the phrase 'without prejudice.'" (Trustmark Opposition at 12.)  But there is nothing abusive about interpreting the parties' agreements to mean what they plainly say.  Indeed, Clarendon's interpretation is consistent with New York law, which recognizes that "without prejudice" payments do not "have any legal effect upon the rights of the parties … and … such rights will be as open to settlement by legal controversy as if the money had not been turned over by one to the other."  *Hinton v. Bogart*, 140 N.Y.S. 111, 113 (N.Y. App. Term 1913).  *See also Svenska Taendsticks Fabrik Aktiebolaget v. Bankers Trust Co.*, 196 N.E. 748, 750-51 (N.Y. 1935) ("the words 'without prejudice' to lawyers … have a well known, definite meaning"); *Castano v. Gabriel*, 302 N.Y.S.2d 943, 946 (N.Y. Civ. Ct. 1969) (when acts are "done 'without prejudice' … no determinative legal

---

[2] Trustmark's argument is also internally inconsistent.  While it contends the $3,823,952.78 offset figure is immutable, many of the individual claims that gave rise to that figure were excluded from coverage by the arbitrators when they held ORS claims were not covered. (Lester Aff. Ex. 70.)  Trustmark relies on a "Treaty Level" Allocation Agreement, which is an invention and phrase not used in any of the agreements.

effect is completed; it is reserved for future determination"); *Lew Morris Demolition Co., Inc. v. Bd. of Educ.*, 355 N.E.2d 369, 372 (N.Y. 1976). The language in the Side Letters and the MELEX Settlement Agreement cannot be honestly read otherwise.

Trustmark now argues for the first time that the parties' use of the phrase "without prejudice" is "ambiguous." (Trustmark Opposition at 16.) Whether a contract is ambiguous is a question of law for the Court. *See Katel Ltd. Liabilty Co. v. AT&T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010). Here, the parties stated as clearly as possible that the offset payments would not effect their legal rights. *See Hinton*, 140 N.Y.S. at 113.

Trustmark tries to create ambiguity where it does not exist through declarations from two previously undisclosed experts, Stephen Hartigan and Paul Riding.[3] The declarations are unavailing. Both "experts" purport to offer general opinions on the use of the phrase "without prejudice" in the context of a settlement offer. They contend this precludes the later use of the offer against the party making it. (Hartigan Decl. ¶¶ 6-8; Riding Decl. ¶ 5.) This is akin to Federal Rule of Evidence 408 and it is not the context here. In the Side Letters and MELEX Settlement Agreement, the term "without prejudice" refers to the offset *payments*, not negotiations or settlement offers. When a payment is labeled "without prejudice" in an executed agreement, the meaning of the phrase is clear and unambiguous. *See Hinton*, 140 N.Y.S. at 113. Neither expert is competent to testify as to the parties' use of the phrase in the specific context of the Side Letters and the MELEX Settlement Agreement.

---

[3] Under Fed. R. Civ. P. 37(c)(1), neither declaration should be considered. Trustmark has not disclosed either expert as required by Rule 26(a), despite having been aware since the beginning of this litigation that the meaning of the term "without prejudice" would be a central issue. (Compl. ¶¶ 39–41). Indeed, Trustmark agreed in the parties' first scheduling conference before Magistrate Judge Dolinger that it would not be calling any experts. Trustmark ought not be allowed to change course now and ambush Clarendon with these "experts" in a summary judgment response brief. *See Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 67 F. Supp. 2d 293, 298 (S.D.N.Y. 1999) (refusing to consider expert affidavit attached to summary judgment motion where party failed timely to identify witness as an expert).

Nor is Trustmark helped by its invocation of the voluntary payment doctrine. New York law is clear that "the voluntary payment doctrine is inapplicable where the payment is made under an appropriate protest or the circumstances attending the payment demonstrate the payor's intention to preserve the right to dispute the legality of the payee's demand." *Jenoure v. Body Solutions Plus, LLC of Westbury*, --- N.Y.S.2d ----, 29 Misc. 3d 84, 86 (N.Y. App. Term. 2010), citing 82 N.Y. Jur. 2d, Payment and Tender, § 83. Clarendon expressly reserved its rights and noted the payments were "without prejudice." (Redpath Decl. Exs. 26, 35, 37 & 39.) The voluntary payment doctrine is inapplicable by definition.

### D. Even if Clarendon Had Breached the Offset Agreements, Trustmark Could Not Avoid the Payments it Promised.

A fundamental flaw in Trustmark's breach argument is that New York law provides that when a party contends its counterparty has materially breached a contract, it must choose whether to perform and sue for breach or to rescind. *Strasbourger v. Leerburger*, 134 N.E. 834, 835 (N.Y. 1922) (holding that a party cannot "at the same time treat the contract as broken and as subsisting"). Here, Trustmark has asserted counterclaims based on Clarendon's alleged breach of the Settlement Agreements and Side Letters and thus treated these agreements as subsisting. Even if Clarendon had breached, Trustmark would still have to honor its obligations. *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 893 N.Y.S.2d 237, 239 (N.Y. App. Div. 2010). Yet Trustmark argues the March 2007 allocation was "binding," and simultaneously refuses to credit Clarendon for even these offsets. Trustmark's breach theory would not allow it to escape paying altogether, as it seeks to do.

7

### III.   CLARENDON'S CLAIMS HAVE NOT BEEN ADJUDICATED.

Trustmark's other argument has already been rejected by this Court. Trustmark contends that Clarendon's claims were "litigated and decided." (Trustmark Opposition at 2.) As this Court has correctly ruled, Trustmark's obligations under the Settlement Agreements have never – in fact – been adjudicated. (Aug. 10, 2010 Order.) Trustmark makes no mention of, let alone attempt to distinguish, the Court's prior ruling.

Trustmark instead asserts that "it is beyond dispute that Clarendon submitted the Settlement Agreements, Side Letters and the Allocation Agreement to the arbitrators." (Trustmark Opposition at 10.) This is demonstrably false. Trustmark withdrew the offsets from its billing, because, it told the arbitrators, they had "no jurisdiction to rule on the validity and/or allocation of these purported offsets." ("Redpath Decl." Ex. 93.) The underlying obligations and the terms of the offset agreements were never presented and the actual agreements were never even in evidence. (Keenan Nov. 19, 2010 Decl., Ex. A at No. 29 [Docket No. 68].) As Trustmark admitted in the confirmation proceedings:  *"Clarendon has never even commenced legal proceedings against Trustmark for these claims* [to enforce the Settlement Agreements.]" (Keenan Jan. 29, 2010 Decl., Ex. A [Docket No. 18].)

Trustmark's suggestion that its removal of the offsets was litigated and decided against Clarendon, consists of the same failed conflation of the issues it argued in its motion to dismiss. Whether the arbitration award should account for the offsets is different than the issue of the whether Clarendon is entitled to payment for the underlying obligations. The former issue was raised in post-hearing proceedings before the arbitrators and in confirmation proceedings before Judge Coar. But the arbitrators made no deduction for the offsets and Judge Coar ruled he was not deciding that issue. *"The*

8

*proper forum for addressing these issues,*" Judge Coar wrote is "*in ... a separate action (for example a declaratory judgment action) to determine whether setoff is appropriate*" – that is, an action exactly like the one Clarendon commenced here. *Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 09 C 1673, 2009 WL 4043110, *4 (N.D. Ill. Nov. 20, 2009) (emphasis added). A party cannot use *res judicata* or collateral estoppel to preclude a claim when "the court in the earlier action expressly reserved the litigant's right to assert its claim at a later time." *Cabrera v. First Nat'l Bank of Wheaton*, 753 N.E.2d 1138, 1145 (Ill. Ct. App. 2001). Trustmark continues flatly to ignore the express reservation in Judge Coar's ruling.

### IV.    TRUSTMARK'S OTHER CHALLENGES TO CLARENDON'S DECLARATORY JUDGMENT CLAIM ARE MERITLESS.

Clarendon's declaratory judgment count seeks a ruling that its April 6, 2009 letter properly satisfied by offset Clarendon's obligations to Trustmark under the Second Corrected Final Award from the parties' arbitration. Clarendon seeks to offset liquidated amounts that are admittedly unsatisfied, which is expressly allowed by New York law. *See D&B Enterprises No. 2 v. Cablam Inc.*, 729 N.Y.S.2d 239 (N.Y. App. Term 2001) (allowing tenant to satisfy a landlord's judgment by setting off a liquidated security deposit). Trustmark ignores this case when erroneously contending that a money judgment can only be satisfied by a cash payment and not by offset. (Trustmark Opposition at 23.) Trustmark relies on a 1914 case, *Dowling v. Hastings*, 105 N.E. 194, 195 (N.Y. 1914), which involved a party's attempt to satisfy a judgment with an unliquidated and disputed claim. *Dowling* does not stand for the broad proposition that a party who holds a liquidated debt from another cannot use that debt to satisfy a judgment.

9

Trustmark also asserts that the amounts due Clarendon are "contingent." (Trustmark Opposition at 23-24.) Trustmark relies on language in some of the offset agreements providing for the possibility that arbitrators might conclude that Clarendon owes Trustmark less than the offset payments Trustmark promised Clarendon, in which case Clarendon would have a claim against Trustmark for any shortfall. (Redpath Decl. Exs. 35, 37 & 39.) This self-evident term does not help Trustmark and certainly does not make Clarendon's claims "contingent." The $10.1 million in principal due Clarendon under the Settlement Agreements will not change, except by satisfaction. Moreover, Clarendon seeks a declaration that it properly applied $6.6 million of that $10.1 million in offsets to satisfy the arbitration award. Consequently, the amount subject to the declaration is less than the total amount of the offsets and there is no possibility that Clarendon's obligations to Trustmark will be less. Most importantly, Trustmark has expressly repudiated the offset agreements by withdrawing the offsets from its billings. Having done so, Clarendon is entitled to enforce the underlying Settlement Agreement obligations. *F & M Schaefer Corp. v. Elec. Data Sys. Corp.*, 430 F. Supp. 988, 992 (S.D.N.Y. 1977).

## CONCLUSION

Clarendon's summary judgment motion should be granted.

Dated:   January 13, 2011                                    Respectfully submitted,
                                                             FOLEY & LARDNER LLP

                                                             _s/Brian P. Keenan_____
Robert A. Scher, Esq.                                        Brett H. Ludwig, Esq. (pro hac vice)
90 Park Avenue                                               G. Michael Halfenger, Esq. (pro hac vice)
New York, New York 10016-1314                                Brian P. Keenan, Esq. (pro hac vice)
Tel:  212-338-3405; Fax:  212-687-2329                       777 E. Wisconsin Avenue
                                                             Milwaukee, WI 53202
*Attorneys for Plaintiffs and Counter-*                      Tel: 414-271-2400; Fax: 414-297-4900
*Defendants*

10

**CERTIFICATE OF SERVICE**

This certifies that I caused CLARENDON'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT to be served on the parties listed below via the Court's ECF System this 13th day of January , 2011.

| | |
|---|---|
| Everett J. Cygal | Brian J. Neff |
| David M. Spector | SCHIFF HARDIN LLP |
| Robert C. Feldmeier | 900 Third Avenue |
| Colin M. Proksel | Twenty-Third Floor |
| SCHIFF HARDIN LLP | New York, NY 10022 |
| 6600 Sears Tower | |
| Chicago, IL 60606 | |

_s/Brian P. Keenan_____
Robert A. Scher, Esq.
90 Park Avenue
New York, New York 10016-1314
Tel:  212-338-3405
Fax:  212-687-2329

Brett H. Ludwig, Esq.
Brian P. Keenan, Esq.
Foley & Lardner LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel: 414-271-2400
Fax: 414-297-4900

*Attorneys for Plaintiffs and Counter-Defendants*
*CLARENDON NATIONAL INSURANCE COMPANY and CLARENDON AMERICA INSURANCE COMPANY*