| | |
|---|---|
| David M. Spector, Esq. | Brian J. Neff, Esq. |
| Everett J. Cygal, Esq. | SCHIFF HARDIN LLP |
| Robert C. Feldmeier, Esq. | 900 Third Avenue |
| Colin M. Proksel, Esq. | 23rd Floor |
| SCHIFF HARDIN LLP | New York, New York 10022 |
| 233 South Wacker Drive | Tel: (212) 753-5000 |
| Chicago, Illinois 60606 | |
| Tel: (312) 258-5500 | Attorneys for Defendant, Counter-Plaintiff |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------X
CLARENDON NATIONAL INSURANCE      :
COMPANY and CLARENDON AMERICA     :
INSURANCE COMPANY,                :
                                  :
        *Plaintiffs*,                  :
                                  :
    v.                          :
                                  :
TRUSTMARK INSURANCE COMPANY       :
                                  :
        *Defendant.*                   :
----------------------------------------------------------------X    09 cv 9896 (BSJ-MHD)
TRUSTMARK INSURANCE COMPANY       :
                                  :
        *Defendant, Counter-Plaintiff.* :
                                  :
                                  :
    v.                          :
                                  :
CLARENDON NATIONAL INSURANCE      :
COMPANY and CLARENDON AMERICA     :
INSURANCE COMPANY,                :
                                  :
        *Plaintiffs, Counter-Defendants.* :
----------------------------------------------------------------X

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS**
<u>**MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56**</u>

**TABLE OF CONTENTS**

                                                                                     **Page**

I.     INTRODUCTION ............................................................................................................. 1

II.    ARGUMENT................................................................................................................... 3

        A.     The Allocation Agreement Is Valid And Binding .................................................. 3

        B.     The Term "Without Prejudice" Cannot Be Read to Render the Allocation
              Agreement Non-binding ......................................................................................... 5

        C.     Clarendon's Breaches of the Allocation Agreement Are Material ......................... 5

        D.     Clarendon's Breaches Relieved Trustmark of Its Obligations Under the
              Settlement Agreements .......................................................................................... 6

        E.     Trustmark Never Breached the Offset Agreements................................................ 7

        F.     The Term "Otherwise Satisf[y]" Does Not Incorporate Offset .............................. 8

        G.     Clarendon Can Only Satisfy the Unappealed Money Judgment Against It
              By the Payment of Cash......................................................................................... 9

III.   CONCLUSION............................................................................................................... 10

## TABLE OF CONTENTS

Page

**Cases**

*AGCO Corp. v. Anglin*, 216 F.3d 589 (7th Cir. 2000) ................................................................. 9

*Automobile Mechanics Local 701 v. Joe Mitchell Buick, Inc.*, 930 F.2d 576 (7th Cir. 1991) ........ 3

*Bankers Leasing Ass'n, Inc. v. Pranno*, 681 N.E.2d 28 (Ill. App. Ct. 1997) .............................. 2, 9

*Bernard Nat'l Loan Investors, Ltd. v. Traditions Management, LLC*, 688 F.Supp.2d 347 (S.D.N.Y. 2010) ................................................................................................................. 6, 7

*Boudreaux v. State of La. Dept. of Transp.*, 849 N.Y.S.2d 262 (App. Div.), *aff'd*, 11 N.Y.3d 321 (2008), *cert. denied*, 129 S.Ct. 2864 (2009) ................................................................. 2

*Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505 (7th Cir. 1991) ................................................................................................................................ 9

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 18 (1995) ......................................................... 10

*Dowling v. Hastings*, 105 N.E. 194 (N.Y. 1914) ......................................................................... 10

*Edward Elec. Co. v. Automation, Inc.*, 593 N.E.2d 833 (Ill. App. Ct. 1992) ............................. 2, 9

*Estate of Hamilton v. City of New York*, 627 F.3d 50 (2d Cir. 2010) ............................................ 8

*Gumma v. White*, 833 N.E.2d 834 (Ill. 2005) ............................................................................... 2

*Heller v. Lee*, 474 N.E.2d 856 (Ill. App. Ct. 1985) ...................................................................... 10

*Home State Bank/National Ass'n v. Potokar*, 617 N.E.2d 1302 (Ill. App. Ct. 1993) .................... 10

*Int'l Union of Operating Eng'rs, Local No. 841 v. Murphy Co.*, 82 F.3d 185 (7th Cir. 1996) .. 2, 9

*River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883 (Ill. 1998) ......................................... 2

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) ................................................. 2

*Sloan Elec. v. Prof. Realty & Develop. Corp.*, 819 N.E.2d 37 (Ill. App. Ct. 2004) ................... 2, 9

*Stevens v. Publicis, S.A.*, 854 N.Y.S.2d 690 (App. Div. 2008) ...................................................... 4

*Taylor v. Sturgell*, 553 U.S. 880 (2008) ........................................................................................ 2

*Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 09-C-1673, 2009 WL 4043110 (N.D. Ill. Nov. 20, 2009) ........................................................................................................... 3, 8, 9

*Williamson v. Delsener*, 874 N.Y.S.2d 41 (App. Div. 2009) ......................................................... 4

**Other Authorities**

47 Am. Jur. 2d Judgments § 816 .................................................................................................. 10

Glen Banks, *New York Contract Law* §17:12 (2006) ..................................................................... 7

I.     **INTRODUCTION**

Clarendon makes the following arguments in opposing Trustmark's Motion for Summary Judgment: [1]

- No Allocation Agreement exists.  C.'s Mem. in Opp. to T.'s Mot. for S.J. [Doc. No. 88], pp. 15-16 ("Opposition").
- The term "without prejudice" renders any allocation non-binding.  Id., pp. 16-17.
- In the alternative, Clarendon's breaches of Allocation Agreement were neither material nor damaged Trustmark.  Id., pp. 18-19.
- Even if Clarendon breached, Trustmark cannot prevail.  Id., pp. 17-19.
- Trustmark, according to Clarendon, breached the offset agreements.  Id., pp. 13-15.
- Clarendon can still, it insists, "otherwise satisf[y]" the Second Corrected Final Award by offset and, further, that offset is "appropriate as a matter of common law." Id., pp. 21-24.

These contentions range from simply wrong to frivolous and Trustmark will address them in turn.  At the outset, however, it is important to revisit the straightforward facts of this case.  Pursuant to the Settlement Agreements, Trustmark was to pay Clarendon certain cash sums to settle the Clarendon Contracts.  Certain Side Letters modified the Settlement Agreements such that Trustmark's payments and Clarendon's payments on the Trustmark Contracts—the International II and VQS II—would take the form of offsets.  Independently, in the March 2007 Allocation Agreement, the parties agreed that the maximum amount to be allocated to the International II was $3,823,952.78.  As a result, the reminder of the offsets would be allocated to the VQS II.

As a matter of law, therefore, Clarendon's subsequent conduct in the International II arbitration is fatal to its current motion for summary judgment.  First, Clarendon has repeatedly admitted that "Clarendon asked [the Panel], among other things, that Trustmark be required to credit all of the offsets . . . ."  Opposition, p. 9 (citing Redpath Decl. ¶ 23 & Ex. 92 (C.'s Jan. 28,

---

[1] Trustmark's Reply uses the same abbreviations as in its Trustmark's Motion for Summary Judgment. D.'s Mem. of Law in Supp. of Its Mot. for S.J. [Doc. No. 71] ("Motion").

-1-

2009 letter to the Panel)); *see also* P.'s Mem. of Law in Supp. of Mot. for S.J. [Doc. No. 66], p. 9 (same).  The Panel denied any such relief.  R. 56.1 ¶ 103 ("All other requests for relief [not granted] . . . are denied.").  And now Clarendon's claims are plainly barred under *res judicata*, and collateral estoppel, as matters "actually decided in the first action, as well as those matters that could have been decided."  *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998); *see also Gumma v. White*, 833 N.E.2d 834, 843 (Ill. 2005).

Second, applicable Illinois law bars Clarendon's claims.[2]  The Panel is presumed to have "considered and fully determined all matters submitted to them," even when they did not mention the issue in the award.  *Bankers Leasing Ass'n, Inc. v. Pranno*, 681 N.E.2d 28, 33 (Ill. App. Ct. 1997); *see also Sloan Elec. v. Prof. Realty & Develop. Corp.*, 819 N.E.2d 37, 46 (Ill. App. Ct. 2004); *Edward Elec. Co. v. Automation, Inc.*, 593 N.E.2d 833, 840 (Ill. App. Ct. 1992).  Clarendon has conceded this governing presumption; Clarendon has made no attempt to rebut it.

Third, Seventh Circuit precedent concerning arbitration also precludes Clarendon's claims.  Because the Panel did not grant Clarendon an award on its requested offset relief, Seventh Circuit precedent holds the Panel rejected the same.  *Int'l Union of Operating Eng'rs, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 189-90 (7th Cir. 1996) (holding arbitrator's failure to mention offsets in his ruling after it was raised means that no offset was granted); *Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 09-C-1673, 2009 WL 4043110, at *3 (N.D. Ill. Nov. 20,

---

[2] Illinois law governs because the International II specifically adopted Illinois law and jurisdiction to govern arbitrations.  Proksel Decl. at ¶¶ 2-3, Exs. 1-3, p. 3, General Conditions ("Arbitration Clause – Law and Jurisdiction Illinois, USA.").  Accordingly, the Panel's decision, as adopted by Judge Coar in the Northern District of Illinois, has the force of an Illinois judgment.  *See, e.g., Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) (finding preclusive effect of a diversity judgment is determined by the law of the state where the district court entered judgment (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001))).  A court sitting in New York is required to accord that judgment the same preclusive effect as an Illinois court would give it under Illinois law.  *See Boudreaux v. State of La. Dept. of Transp.*, 849 N.Y.S.2d 262, 264 (App. Div.), *aff'd*, 11 N.Y.3d 321 (2008), *cert. denied*, 129 S.Ct. 2864 (2009).

2009) (finding "that the Panel intended the term 'otherwise satisfied' to incorporate setoffs, rather than explicitly addressing the matter [and rejecting it] fails in light of the Seventh Circuit's holding in *Automobile Mechanics* [*Local 701 v. Joe Mitchell Buick, Inc.*, 930 F.2d 576, 578 (7th Cir. 1991)]."). Again, Clarendon has never addressed this controlling law.

Furthermore, while Trustmark adhered to the agreements above during the arbitration, Clarendon openly breached the Allocation Agreement twice. First, in the Phase II Hearing on damages in the International II arbitration, Clarendon breached the Allocation Agreement by claiming entitlement to all of the offsets. Second, Clarendon breached by purporting to satisfy the Second Corrected Final Award in its entirety, or $6,645,648, by offset. Because the terms of the Allocation Agreement are undisputed and there is also no genuine issue of material fact that Clarendon breached the terms of that Agreement, the Court should enter summary judgment against Clarendon on its breach of contract claims, Counts I-V of Clarendon's Complaint.

The Court should also enter summary judgment against Clarendon's claim for declaratory relief, Count VI, because both the Panel and Judge Coar rejected satisfaction of the Second Corrected Final Award—now the Judgment—by offset. Notwithstanding that Judge Coar recognized that he could only confirm the award in a Federal Arbitration Act proceeding, he clearly found that Clarendon sought offset before the Panel, as Clarendon now grants, and that the Panel denied such relief. Accordingly, Judge Coar's findings and Judgment are entitled to preclusive effect, and Clarendon's entire Complaint, Counts I-VI, is barred. Moreover, the money judgment that Judge Coar entered can only be satisfied by cash, not contingent offsets.

## II. ARGUMENT

### A. The Allocation Agreement Is Valid And Binding

Clarendon's efforts to avoid the adverse effects of breaching the Allocation Agreement take the form of a curious claim that "[t]here is actually no such agreement." Id., p. 15. Rather,

Clarendon tries to recast the Allocation Agreement as an aspect of the MELEX Settlement Agreement and Side Letters in which the parties agreed to "work together in good faith to mutually agree upon the specific claims that will be deemed paid." Id., pp. 15-16.

But Clarendon cannot gloss over the e-mail exchanges between Mike Hawksworth of Trustmark and Alan Mahadeo of Clarendon, culminating in the March 21, 2007 e-mail, which clearly establishes the existence and terms of the Allocation Agreement. It is well settled under New York law that binding contracts may be formed by such an exchange of e-mails. For example, in *Stevens v. Publicis, S.A.*, 854 N.Y.S.2d 690 (App. Div. 2008), the parties to an acquisition agreement agreed to a modification in an exchange of emails. The first e-mail contained a specific proposal made by the defendant to which the plaintiff responded "I accept your proposal with total enthusiasm and excitement." The defendant then responded, "I am thrilled with your decision." The operative e-mails, as here, "bore the typed name of the sender at the foot of the message." The court held that the exchange of emails constituted a binding agreement, duly signed by the parties. *Id.* at 692. *Accord Williamson v. Delsener*, 874 N.Y.S.2d 41 (App. Div. 2009).

As more fully described in Trustmark's Motion, following the First Side Letter, the parties agreed to both a claim level allocation and a treaty level allocation—the latter of which is the Allocation Agreement at issue here. Motion, pp. 14-17. Though Clarendon dragged its feet in working on either allocation, Trustmark proposed an allocation that, in part, provided the maximum amount to be allocated to the International II was $3,823,952.78. Id., p. 15 (citing S.J. Ex. 41). Clarendon's Mr. Mahadeo agreed, subscribing his name at the bottom of the e-mail:

> Mike.
>
> Agreed...$1.4 previously paid should have been negative. Also, I accept the your revised allocation (sic), and now agree to the claims offset approached (sic).

Alan

Id., p. 16 (R. 56.1 ¶¶ 66-70 (S.J. Ex. 50) (ellipsis in original)).  As such, the treaty level Allocation Agreement is separate and independent of the claim level allocation.  It is binding in and of itself.  And, regardless of the claim level allocation, or the effect of the MELEX Settlement Agreement, the Side Letters, or the Second Corrected Final Award on the claim-level allocation, the treaty level Allocation Agreement remains binding on Clarendon.

**B.     The Term "Without Prejudice" Cannot Be Read to Render the Allocation Agreement Non-binding**

Clarendon argues that Trustmark "fatally ignores the 'without prejudice' terms of the offset agreements." Opp., p. 16.  Relying again on the same inapposite authority as in its initial memorandum, Clarendon contends that "[u]nder this express language, when Clarendon agreed with Trustmark in March of 2007 that the offsets would be allocated to certain individual Trustmark claims, Clarendon was not binding itself to paying those or any other claims."  Id.

However, as Trustmark demonstrated in detail in its Opposition to Clarendon's motion for summary judgment, Clarendon's overbroad interpretation of the phrase "without prejudice" is inconsistent with the express terms of the Settlement Agreements and the well established customs and usages of the reinsurance industry, as well as the parties' prior negotiations and subsequent course of performance.  T.'s Mem. of Law in Opp. to C.'s Mot. for S.J. [Doc. No. 82] ("T.'s Opp."), pp. 12-21.  The term "without prejudice" is not invested with such magical powers that its mere incantation can relieve Clarendon of the binding effects of its voluntary payments.

**C.     Clarendon's Breaches of the Allocation Agreement Are Material**

Clarendon asserts that Trustmark has "put forward no evidence that Clarendon's purported breach was material as opposed to a minor breach for which Trustmark could be compensated in damages" or that Trustmark "suffered any damage from Clarendon's purported

breach." Opposition, p. 19.  But Clarendon's breaches are both material and damaging.

New York law holds that "[f]or a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." *Bernard Nat'l Loan Investors, Ltd. v. Traditions Management, LLC*, 688 F.Supp.2d 347, 361 (S.D.N.Y. 2010).

Clarendon's breach of the Allocation Agreement is material for three reasons.  First, the allocation was important to Trustmark because it was a means of providing security against a collection risk that Trustmark bargained for with respect to the International II, the VQS II, and the pending VQS II arbitration.  T.'s L.R. 56.1 Opp. Resp. to P.'s Stmt. [Doc. No. 83], ¶ 27 (citing Lester Aff. II, Ex. 75, Marcuccilli Dep. at 21:18-22:7, 32:5-16; Lester Aff. II, Ex. 76, Lester 30(b)(6) at 20:5-22:1, 25:5-15, 65:14-66:8).  The importance of this security has only increased, given that Clarendon's parent is now selling Clarendon to an unrated company in the second quarter of 2011.  Proksel Decl., ¶ 3, Ex. 4.  Second, acceleration of the offsets would improperly lock in the validity of the offsets, which, as set forth in the Motion, are contingent on the outcome of another litigation that will commence after the VQS II arbitration is concluded. Motion, pp. 10-12.  Trustmark explicitly negotiated for this provision.  Id.  Lastly, from a time value of money perspective, Clarendon strives to delay the payment of cash as long as possible.

### D. Clarendon's Breaches Relieved Trustmark of Its Obligations Under the Settlement Agreements

Clarendon contends that even if it breached, Trustmark cannot prevail in this case. Specifically, Clarendon states "Trustmark's assertion that Clarendon breached the offset arrangement would not, even if consistent with the parties' agreements, entitle Trustmark to avoid payment."  Opposition, pp. 17-18.  Clarendon's position runs into a wall of New York law.

As a matter of black letter New York law, "[o]ne party's material breach of the agreement relieves the other party from any obligation to perform under the contract." Glen Banks, *New York Contract Law* §17:12 (2006); *see also Bernard Nat'l*, 688 F.Supp.2d at 361 ("Under New York law, when a party has breached a contract, that breach may excuse the nonbreaching party from further performance if the breach is 'material.'" (citation omitted)). As described more fully in the Motion, Clarendon breached the Allocation Agreement by not only claiming entitlement to all of the offsets in the Phase II Hearing but also purporting to satisfy the Second Corrected Final Award in its entirety, or $6,645,648, by offset. Motion, pp. 19-22. And, as described above, Clarendon's breaches of the binding Allocation Agreement are material. Accordingly, Clarendon's breaches relieve Trustmark from giving Clarendon $3,823,952.78 under the Allocation Agreement or any other amount Clarendon baselessly claims is due.

### E. Trustmark Never Breached the Offset Agreements

Clarendon insists that Trustmark breached the Side Letters and Settlement Agreements. Opposition, pp. 9-10, 13-15. Specifically, Clarendon claims Trustmark breached the contracts by (1) initially giving Clarendon credit for $3,823,952.78, not $10.1 million, in offset in the Phase II Hearing on damages; (2) repudiating the contracts by giving Clarendon no credit for the offsets after Clarendon demanded $10.1 million in offset; and (3) never paying cash under the Settlement Agreements. Id. Clarendon's claims ignore the facts.

First, as described more fully in the Motion, Mr. Redpath, Clarendon's General Counsel and Rule 30(b) representative, originally testified that Trustmark did not breach the Settlement Agreements, the Side Letters, or the Allocation Agreement during either the Phase I hearings on liability or the Phase II Hearings on damages during the International II arbitration. Motion, pp. 17-19; T's Opp., pp. 5-6. In fact, he stated that Trustmark abided by the Allocation Agreement during the arbitration. Id. Mr. Redpath's subsequent change of testimony in his declaration in

support of Clarendon's motion for summary judgment must be disregarded under Second Circuit precedent. Id., pp. 3-5 (citing *Estate of Hamilton v. City of New York*, 627 F.3d 50, 54 (2d Cir. 2010)).

Second, even to the extent that Clarendon places Trustmark's breach after the date of the March 20, 2009 Second Corrected Final Award, the award by its terms did not permit Clarendon to satisfy it by offset. Motion, pp. 29-30. And Judge Coar found the same in his Memorandum and Opinion. *Trustmark*, 2009 WL 4043110, at *3. Because Clarendon requested that the Panel permit payment by offset, such relief had to be stated in the award to be permissible.

Lastly, Clarendon's claim that Trustmark breached by not paying cash is a red herring. It is undisputed that the Side Letters modified the payment terms of the Settlement Agreements. C.'s Resp. to D.'s R. 56.1 Stmt. [Doc. No. 79], ¶¶ 27, 28, 47, 48, 58, 59. Moreover, it is undisputed that, under the MELEX Settlement Agreement and Later Side Letters, the only scenario under which Clarendon may be able to seek a cash payment from Trustmark was to bring a "claim" after the conclusion of the VQS II arbitration. Motion, pp. 10-12.

### F.     The Term "Otherwise Satisf[y]" Does Not Incorporate Offset

Clarendon argues that Second Correct Final Award established the ultimate amount to be offset regarding the International II and that "offset is consistent with the arbitrators' express ruling that Clarendon could 'pay or otherwise satisfy[y] (sic)' the amount due." Opposition, pp. 19-20. But the pivotal part of Clarendon's argument has already been rejected twice and Clarendon's claim fails here again for that reason. Motion, pp. 34-39.

The irony of Clarendon's position is that if it had not raised the offsets before the Panel, as it must admit it did (Opposition, p. 9), it may have had a basis to argue "pay or otherwise satisf[y]" does incorporate offset before this Court. But, after Clarendon put the offset "on the table" before the Panel, the Panel considered the offsets and granted Clarendon no relief

whatsoever on the issue in the Second Corrected Final Award.[3]  Opposition, p. 9; R. 56.1 ¶ 103; *Trustmark*, 2009 WL 4043110, at *1-3 & n.3.  Under Illinois law, the Panel is presumed to have "considered and fully determined all matters submitted to them," even when they did not mention the issue in the resulting award.  *Bankers Leasing*, 681 N.E.2d at 33; *see also Sloan Elec.*, 819 N.E.2d at 46; *Edward Elec.*, 593 N.E.2d at 840.  Clarendon has utterly failed to address this law.

For the same reasons, Seventh Circuit precedent also precludes Clarendon's argument.  Based on his review of the record, Judge Coar found, among other things, that "Clarendon did raise the issue of setoffs before the Panel, albeit unsuccessfully."  *Trustmark*, 2009 WL 4043110, at *3 n.3.[4]  He also found that "the Panel considered the issue of Trustmark's potentially offsetting debts, [and] it opted not to recognize or enforce any setoffs when rendering its final award."  *Id.* at *3.  As a result, Judge Coar concluded that "Clarendon's implied argument that the Panel intended the term 'otherwise satisfied' to incorporate setoffs, rather than explicitly addressing the matter [and rejecting it] fails in light of the Seventh Circuit's holding in *Automobile Mechanics*."  *Id.*; *see also Murphy*, 82 F.3d at 189-90.  Again, tellingly, Clarendon has made no attempt to respond to either this finding or Seventh Circuit precedent.

### G. Clarendon Can Only Satisfy the Unappealed Money Judgment Against It By the Payment of Cash

Clarendon asserts that offset is "appropriate as a matter of common law," claiming the offsets are liquated.  Opposition, pp. 21-24.  Clarendon's position misstates the facts and the law.

---

[3] A court may not scrutinize an arbitral decision or "substitute its own interpretation even if convinced that the arbitrator's interpretation was not only wrong, but plainly wrong."  *See, e.g., Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505, 1506 (7th Cir. 1991).

[4] Because Clarendon "willingly and without reservation allowed an issue to be submitted to arbitration," i.e., the offsets, it is also prohibited from awaiting the outcome and then arguing lack of jurisdiction.  *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000).

Under both New York *and Illinois law*, which Clarendon ignores but where the Judgment was entered, "the only way a money judgment can be satisfied is by payment in money, unless the parties agree otherwise." *Home State Bank/National Ass'n v. Potokar*, 617 N.E.2d 1302, 1305 (Ill. App. Ct. 1993); *Heller v. Lee*, 474 N.E.2d 856, 857 (Ill. App. Ct. 1985); 47 Am. Jur. 2d Judgments § 816; *see also Dowling v. Hastings*, 105 N.E. 194, 195 (N.Y. 1914). Trustmark has not agreed otherwise. Even *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 18 (1995), which Clarendon relies on (Opposition, p. 24), holds that there is a requirement of intent to permanently settle accounts to effect offset. *Id.* at 19. As such, there is no agreed common law offset here.

Moreover, Clarendon simply fails to respond to the numerous cases Trustmark cites in its initial supporting memorandum, which hold that a party cannot offset claims that are "contingent, possible, and/or *in futuro*", such as those being litigated in the VQS II arbitration and after, against sums reduced to judgment, such as those awarded to Trustmark in the order confirming the award in the International II arbitration. *See* Motion, pp. 10-12, 31-34.

### III.   CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court grant its Motion for Summary Judgment dismissing Plaintiff's Complaint in its entirety.

DATED:  January 13, 2011          SCHIFF HARDIN LLP

| | |
|---|---|
| Brian J. Neff, Esq.<br>SCHIFF HARDIN LLP<br>900 Third Avenue<br>23rd Floor<br>New York, New York 10022<br>Tel: (212) 753-5000<br>Fax: (212) 753-5044<br><br>ATTORNEYS FOR THE<br>TRUSTMARK INSURANCE COMPANY | By:  /s/ Colin M. Proksel<br>David M. Spector, Esq.<br>Everett J. Cygal, Esq.<br>Robert C. Feldmeier, Esq.<br>Colin M. Proksel, Esq.<br>SCHIFF HARDIN LLP<br>233 S. Wacker Drive<br>Chicago, Illinois 60606<br>Tel: (312) 258-5500<br>Fax: (312) 258-5600 |

**CERTIFICATE OF SERVICE**

I, Colin M. Proksel, hereby certify that on January 13, 2011, a copy of the Defendant's Reply Memorandum of Law in Support of Its Motion for Summary Judgment Pursuant to Rule 56 was filed with the Clerk of the Court and served on the following counsel of record via the Court's CM/ECF system:

| | |
|---|---|
| Robert A. Scher, Esq.<br>FOLEY & LARDNER LLP<br>90 Park Avenue<br>New York, NY 10016<br>Tel: (212) 338-3405<br>Fax: (212) 687-2329<br>rscher@foley.com | Brett H. Ludwig, Esq.<br>G. Michael Halfenger, Esq.<br>Brian P. Keenan, Esq.<br>FOLEY & LARDNER LLP<br>777 E. Wisconsin Avenue<br>Milwaukee, WI 53202<br>Tel: (414) 271-2400<br>Fax: (414) 297-4900<br>bludwig@foley.com<br>mhalfenger@foley.com<br>bkeenan@foley.com |

By: _/s/ Colin M. Proksel_____

Colin M. Proksel, Esq.
SCHIFF HARDIN LLP
233 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 258-5500
Fax: (312) 258-5600

ATTORNEY FOR THE
TRUSTMARK INSURANCE COMPANY