Robert A. Scher, Esq.
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016-1314
Tel:  212-682-7474
Fax:  212-687-2329

Brett H. Ludwig, Esq. (pro hac vice)
G. Michael Halfenger, Esq. (pro hac vice)
Brian P. Keenan, Esq. (pro hac vice)
FOLEY & LARDNER LLP
777 E. Wisconsin Avenue
Milwaukee, Wisconsin  53202
Tel:  414-271-2400
Fax:  414-297-4900

*Attorneys for Plaintiffs and Counter-Defendants*
*Clarendon National Insurance Company and*
*Clarendon America Insurance Company*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

CLARENDON NATIONAL INSURANCE         :
COMPANY and CLARENDON AMERICA        :
INSURANCE COMPANY,                   :
                                     :
    *Plaintiffs and Counter-Defendants,*    :    Civil Action No. 09-cv-9896
                                     :
                v.            :
                                     :
TRUSTMARK INSURANCE COMPANY,         :
                                     :
    *Defendant and Counter-Plaintiff.*      :

------------------------------------------------------------x

**CLARENDON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION**
**FOR A PROTECTIVE ORDER PURSUANT TO N.Y. C.P.L.R. §§ 5238 & 5240**

## INTRODUCTION

Plaintiffs Clarendon National Insurance Company and Clarendon America Insurance Company (collectively "Clarendon") brought this lawsuit specifically to get a declaratory judgment confirming that Clarendon had satisfied a judgment resulting from its arbitration with defendant Trustmark Insurance Company ("Trustmark"). The Court that confirmed the arbitration award told Clarendon to file this action to resolve the satisfaction issue. After allowing Trustmark to complete discovery, Clarendon moved for summary judgment based on the undisputed facts surrounding its satisfaction of the arbitration judgment. On January 7, 2011, with Clarendon's summary judgment motion pending, Trustmark initiated collection proceedings on the disputed judgment. Trustmark secured a ministerial writ of execution from the clerk, without notice to Clarendon or the Court, see *Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 1:11-mc-00006-P1 (S.D.N.Y.) [Docket No. 3], and on January 20, 2011, arranged for the U.S. Marshal to serve a levy of execution on JP Morgan Chase, Clarendon's bank. On January 28, 2011, Clarendon moved the court by way of an order to show cause for an order preventing further execution on the arbitration judgment. (Docket Nos. 91-92.) Clarendon sought a protective order under N.Y. C.P.L.R. § 5240 and a stay of execution under Rules 60 and 62 of the Federal Rules of Civil Procedure to prevent further execution. Clarendon's motion remains pending.

Clarendon brings this additional motion because execution on the judgment has continued in a way that has even further increased the urgency of this issue. Yesterday, on March 30, 2011, Clarendon discovered that its frozen bank account had been debited by nearly $7.9 million and the money sent to the United States Marshal for eventual payment to Trustmark. (Accompanying Affidavit of Robert Scher ¶ 12, ("Scher

Aff.").)  Given the circumstances, Clarendon asks that the Court, pursuant to N.Y. C.P.L.R. §§ 5238 and 5240, order the United States Marshal not to distribute any of this $7.9 million in proceeds to Trustmark pending resolution of the merits of this case.  As in its prior motion, Clarendon remains willing to keep the $7.9 million in an escrow arrangement to ensure that Trustmark would be paid in the event the Court rules against Clarendon on its declaratory judgment claim.  The requested relief could be accomplished in several ways, including repayment of the funds to Clarendon's account while maintaining a restraining notice on them, having the Marshal keep the funds in escrow, or having the Marshal pay the funds into the court registry until the Court has ruled on Clarendon's declaratory judgment claim.  Should Trustmark receive the funds prior to the Court's decision of this motion, Clarendon requests that the Court order Trustmark to pay the funds into the Court registry or return them to the Marshal to hold in escrow pending the Court's resolution of Clarendon's declaratory judgment claim.

Trustmark's tactics are nothing but pure harassment.  Clarendon has a $270 million surplus (assets in excess of liabilities).  There is no reason for Trustmark's conduct.  The Court should prevent Trustmark from making an end-run around this Court's authority to decide the issue of Clarendon's satisfaction, the fundamental claim that is before it.

## FACTS

Clarendon and Trustmark entered into various Settlement Agreements under which Trustmark was obligated to pay Clarendon over $10.1 million.  (Redpath

Decl. Exs. 30, 31, 33, 35, 36 & 38.)[1]  Clarendon agreed that Trustmark could satisfy its

obligations by offset against disputed amounts Trustmark claimed from Clarendon under

two groups of reinsurance agreements called the 1998 International Treaties and the 1998

VQS Treaty.  (*Id.* Exs. 26, 35, 37, & 39.)  In the course of an arbitration with Clarendon

relating to the 1998 International Treaties, Trustmark removed all credit for the

previously agreed offsets and told the arbitration panel that the offsets were outside its

jurisdiction.  (*Id.* Ex. 93.)  The arbitration panel then issued an award granting Trustmark

$6.6 million, exclusive of any offsets.  (*Id.* Ex. 44.)  Because Trustmark still owed

Clarendon over $10.1 million, Clarendon informed Trustmark that it was satisfying the

award by offsetting the $6.6 million owed against the larger amount Trustmark owed to

Clarendon.  (*Id.* Ex. 94.)  This offset was consistent with the parties' offset agreements,

the common law of offset and satisfaction language in the arbitrators' final award.

Trustmark has nevertheless steadfastly refused to accept any offset.

  The judgment at issue in this motion, entered by Judge Coar of the

Northern District of Illinois, confirmed the $6.6 million arbitration award.  In confirming

the award, Judge Coar declined to resolve the issue of whether Clarendon had satisfied

the award, saying that the issue should be raised "in a proceeding to enforce the judgment

or a separate action (for example, a declaratory judgment action) to determine whether

setoff is appropriate and, if so, whether and/or when any setoff occurred." *Trustmark Ins.*

*Co. v. Clarendon Nat'l Ins. Co.*, No. 09 C 1673, 2009 WL 4043110, *4 (N.D. Ill. Nov.

20, 2009).  In response to that ruling, Clarendon initiated this case.  Notwithstanding

Judge Coar's plain ruling, Trustmark has argued that Clarendon's satisfaction claim is

---

[1] These issues have been extensively briefed in Clarendon's Brief in Support of Its Motion for Summary Judgment (Docket No. 66).  Therefore citation is made to the Declaration of Robert Redpath filed in support of that motion (Docket No. 67) ("Redpath Decl.").

barred by res judicata and collateral estoppel.  The Court flatly rejected this argument on Trustmark's motion to dismiss.  Trustmark repeated this meritless contention in the pending summary judgment motions. On January 7, 2011, Trustmark filed a "miscellaneous" action in this court registering the judgment from the Northern District of Illinois that confirmed the arbitration award.  *See Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 1:11-mc-00006-P1 (S.D.N.Y.).  In a ministerial act, and without involvement by this Court, the clerk issued a writ of execution on the judgment.  (*Id.* [Docket No. 3], Scher Aff. Ex. 3.)  On January 20, 2011, the United States Marshal executed a levy on Clarendon's accounts at JP Morgan Chase.  (Scher Aff. Ex. 7.)  On January 28, 2011, Clarendon moved the Court for a protective order and a stay of all enforcement proceedings.  (Docket Nos. 91-92.)  On March 30, 2011, Clarendon learned that its accounts had been debited by nearly $7.9 million.  (*Id.* ¶ 12.)  Clarendon asks that the Court prevent the disadvantage and prejudice inherent in allowing Trustmark to collect on a judgment that Clarendon has paid, and thus deprive this Court of the ability to decide Clarendon's claim that it has already satisfied that judgment.

## I.     THIS COURT SHOULD EXERCISE ITS AUTHORITY TO CONTROL THE MISCELLANEOUS ACTION BY PREVENTING THE DELIVERY OF ANY FUNDS TO TRUSTMARK.

Because Clarendon's long-pending claim for a declaratory judgment (Compl., Count VI) concerns the satisfaction of the very same judgment that Trustmark seeks to enforce, the Court should exercise its authority to take jurisdiction over the miscellaneous action in which the writ of execution was issued.  *See Application of CBS, Inc.*, 663 F. Supp. 1011, 1012 n.1 (S.D.N.Y. 1987).

A.      **The Court Should Prevent the U.S. Marshal from Distributing Any Funds to Trustmark under N.Y. C.P.L.R. §§ 5238 and 5240.**

The Court should use the broad authority over enforcement procedures provided by N.Y. C.P.L.R. §§ 5238 and 5240 to prevent disbursement of the proceeds to Trustmark. Section 5238 grants the court the power to direct the sheriff to "dispose of, account for, assign, return or release all or any part of any … proceeds." Clarendon remains willing to have the funds serve as security pending the Court's determination of the declaratory judgment claim. To arrange for this security, the court can order the U.S. Marshal to return the funds to Clarendon, which will continue to maintain them under a restraining notice. *See id.* Alternatively, the Court could order the Marshal to hold the funds in escrow or to pay the funds into the court registry pending the Court's determination of the declaratory judgment claim. *See id.*

Section 5240 also gives the court the authority to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." Section 5240 is "an omnibus section empowering the court to exercise broad powers over the use of enforcement procedures." *Tweedie Constr. Co., Inc. v. Stoesser*, 409 N.Y.S.2d 444, 445 (N.Y. App. Div. 1978). It grants a court "broad discretionary power to control and regulate the enforcement of a money judgment under CPLR article 52 to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the court." *Sanders v. Mfrs. Hanover Trust Co.*, 644 N.Y.S.2d 1017, 1017 (N.Y. App. Div. 1996). A motion under Section 5240 only requires the movant to show "disadvantage or other prejudice," and does not require a showing of irreparable harm, likelihood of success on the merits or any of the other tests for a preliminary injunction. *See id.* Should Trustmark receive the funds prior to the Court's

5

ruling on this motion, the Court should direct Trustmark under Section 5240 to pay the funds to the Court registry or return them to the U.S. Marshal, pending the Court's resolution of Clarendon's claim for a declaratory judgment.

**B.      Trustmark Should Not Be Allowed to Collect Proceeds From a Writ of Execution That Was Not Validly Issued.**

A protective order is needed because Trustmark's writ of execution was improperly granted.  N.Y. C.P.L.R. § 5230(b) allows executions only "[a]t any time before a judgment or order is satisfied."  Clarendon, however, has satisfied the judgment by offset.  As an initial matter, Clarendon's satisfaction is consistent with the parties' offset arrangement.  The offset agreements all provide that Trustmark's payments due under the Settlement Agreements would "be offset against a like amount payable, or claimed to be payable, by Clarendon to Trustmark under the [1998 International and VQS] Treaties."  (Redpath Decl. ¶ 14 & Exs. 26, 35, 37, & 39; Counterclaim ¶¶ 37, 51, 67, 85.)  The Final Award represents the amount actually determined to be payable by Clarendon to Trustmark under the 1998 International Treaties.

Second, the offset is appropriate as a matter of common law.  New York law allows setoff when debts are mutual and liquidated.  *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002); *Beecher v. Peter A. Vogt Mfg. Co.*, 125 N.E. 831, 833 (N.Y. 1920).  New York law allows, as here, a party to satisfy a judgment with a liquidated claim.  *D&B Enters. No. 2 v. Cablam Inc.*, 729 N.Y.S.2d 239, 240 (N.Y. Sup. Ct. 2001).  New York law is consistent with the United States Supreme Court's recognition that "[t]he right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the 'absurdity of making A pay B when B owes A.'"  *Citizens Bank of Maryland v. Strumpf*,

516 U.S. 18, 18 (1995) (quoting *Studely v. Boylston Nat'l Bank of Boston*, 229 U.S. 523, 528 (1913)). There is no dispute that the debts are mutual. The debts are also liquidated: Trustmark's owes $10.1 million due under the Settlement Agreements, plus applicable interest, and Clarendon owes $6.6 million under the Final Award.

        Third, Clarendon's use of offset is consistent with the arbitrators' ruling, which recognized Clarendon's right to satisfy by offset by providing that Clarendon could "pay or otherwise satisfy" the amount due. Within thirty days of the Final Award, Clarendon sent a letter to Trustmark stating that it was reducing the amounts Trustmark owed to it by the $6.6 million Clarendon owed to Trustmark under the Final Award. (Redpath Decl. Ex. 94.)

### C.    The Court Should Prevent Payments to Trustmark Pending Resolution of the Satisfaction Issue.

        Allowing Trustmark to collect on the judgment would preclude Clarendon from litigating its declaratory judgment claim. If Trustmark is allowed to collect on the judgment, it will have received payment on the judgment before Clarendon's declaratory judgment claim could be decided. At the same time, Clarendon would be prevented from raising satisfaction as a defense in an "enforcement action" (the alternative manner directed by the confirmation court). Effectively, no party could ever satisfy a judgment by offset with a liquidated claim because the judgment creditor could simply execute on the judgment, and the judgment debtor would have no ability whatsoever to litigate its claim. This is in direct conflict with New York law, which allows satisfaction by offset against liquidated claims. *D&B Enterprises*, 729 N.Y.S.2d at 240.

        Section 5240 allows the Court to prohibit disbursement of the proceeds to Trustmark in order to allow the Court the opportunity to rule on the issue of Clarendon's

satisfaction.  One of the purposes of Section 5240 is to "postpone the enforcement of a judgment until such time that its enforcement is more properly sought." *Kolortron Sys., Inc. v. Casey*, 500 N.Y.S.2d 36 (N.Y. App. Div. 1986).  In this case, Trustmark should receive the proceeds from the judgment, if at all, after the Court has determined Clarendon's claim for a declaratory judgment that it has satisfied the arbitration award underlying the judgment.  New York courts have stayed judgments in exactly these circumstances, without requiring irreparable harm.  *See, e.g., Susan Ives, New York, Ltd. v. Base Lodge, Inc.*, 359 N.Y.S.2d 1001 (N.Y. App. Div. 1974) (staying execution of judgment while separate litigation between same parties proceeds); *Sverdlove v. Merrill Lynch, Pierce, Fenner & Smith*, 294 N.Y.S.2d 823 (N.Y. Civ. Ct. 1968) (same).

   These cases simply require a showing that the two lawsuits are related such that it is equitable for the judgment from the first lawsuit to be stayed while the second lawsuit proceeds.  They did not analyze the issue as a preliminary injunction requiring a showing of likelihood of success on the merits, irreparable harm, and the public interest. In *Ives*, the court stayed execution on a judgment because the defendant had started separate litigation against the plaintiff which were "inextricably intertwined" with the plaintiff's claims.  359 N.Y.S.2d at 1002.  The court did not require any showing of irreparable harm; it only required that the defendant "provide an undertaking securing payment of the judgment." *Id.* at 1001-02.  Similarly, the *Sverdlove* court stayed the execution of a judgment, without even providing for security, because the defendant in the case had started a separate lawsuit against the plaintiff that involved interrelated issues.  294 N.Y.S.2d at 823.

**II.    UNDER RULE 60(B)(5) AND RULE 62(B)(4), TRUSTMARK
SHOULD NOT BE ABLE TO COLLECT WHEN THE
JUDGMENT HAS BEEN SATISFIED.**

As Clarendon argued in its January 28, 2011 filings, all enforcement

proceedings should be stayed (including any payments by the Marshal to Trustmark)

pending resolution of Clarendon's Rule 60(b)(5) motion for relief from the judgment on

the grounds that "the judgment has been satisfied" and the corresponding motion for a

stay of execution under Rule 62(b)(4).  If Trustmark is allowed to collect on the

judgment, it would render Clarendon's Rule 60(b)(5) motion moot.

## CONCLUSION

For the foregoing reasons, the Court should prohibit the U.S. Marshal

from distributing any proceeds to Trustmark or, if Trustmark has received the proceeds,

require Trustmark to pay the proceeds into the court registry or return them to the

Marshal to be held in escrow.

Dated:   March 31, 2011                      Respectfully submitted,

FOLEY & LARDNER LLP

*Robert A. Scher*

Robert A. Scher, Esq.
90 Park Avenue
New York, New York 10016-1314
Tel:  212-338-3405; Fax:  212-687-2329

Brett H. Ludwig, Esq. (pro hac vice)
G. Michael Halfenger, Esq. (pro hac vice)
Brian P. Keenan, Esq. (pro hac vice)
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel: 414-271-2400; Fax: 414-297-4900

*Attorneys for Plaintiffs and
Counter-Defendants*

## CERTIFICATE OF SERVICE

This certifies that I caused CLARENDON'S ORDER TO SHOW CAUSE,

CLARENDON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A

PROTECTIVE ORDER, AND ROBERT A. SCHER'S AFFIDAVIT IN SUPPORT to be served

on the parties listed below by electronic mail, per agreement between the parties under Rule

5(b)(2)(E), and via the Court's ECF System this 31st day of March, 2011.  Service was

accomplished before the 5:00 p.m. deadline.

| | |
|---|---|
| Everett J. Cygal | Brian J. Neff |
| David M. Spector | SCHIFF HARDIN LLP |
| Robert C. Feldmeier | 900 Third Avenue |
| Colin M. Proksel | Twenty-Third Floor |
| SCHIFF HARDIN LLP | New York, NY 10022 |
| 6600 Sears Tower | |
| Chicago, IL 60606 | |

  /s/ Brian P. Keenan
Robert A. Scher, Esq.
90 Park Avenue
New York, New York 10016-1314
Tel:  212-338-3405
Fax:  212-687-2329

Brett H. Ludwig, Esq.
Brian P. Keenan, Esq.
Foley & Lardner LLP
777 E. Wisconsin Avenue
Milwaukee, WI 53202
Tel: 414-271-2400
Fax: 414-297-4900

*Attorneys for Plaintiffs and Counter-Defendants*
*CLARENDON NATIONAL INSURANCE*
*COMPANY and CLARENDON AMERICA*
*INSURANCE COMPANY*