| | |
|---|---|
| David M. Spector, Esq. | Brian J. Neff, Esq. |
| Everett J. Cygal, Esq. | SCHIFF HARDIN LLP |
| Robert C. Feldmeier, Esq. | 900 Third Avenue |
| Colin M. Proksel, Esq. | 23rd Floor |
| SCHIFF HARDIN LLP | New York, New York 10022 |
| 233 South Wacker Drive | Tel: (212) 753-5000 |
| Chicago, Illinois 60606 | |
| Tel: (312) 258-5500 | Attorneys for Defendant, Counter-Plaintiff |

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

CLARENDON NATIONAL INSURANCE
COMPANY and CLARENDON AMERICA
INSURANCE COMPANY,

        *Plaintiffs*,

   v.

TRUSTMARK INSURANCE COMPANY

        *Defendant.*

---    09 cv 9896 (BSJ-MHD)

TRUSTMARK INSURANCE COMPANY

        *Defendant, Counter-Plaintiff.*

   v.

CLARENDON NATIONAL INSURANCE
COMPANY and CLARENDON AMERICA
INSURANCE COMPANY,

        *Plaintiffs, Counter-Defendants.*

---

**TRUSTMARK'S MEMORANDUM OF LAW IN OPPOSITION TO**
<u>**CLARENDON'S MOTION FOR A PROTECTIVE ORDER**</u>

## INTRODUCTION

For the second time, Clarendon[1] asks the Court to deny effect to a lawful writ of execution, based on a sister court's valid, final and unappealed judgment, ("Judgment"). Although Clarendon ignored the levies of execution served by the United States Marshal, its bank accepted the rule of law and complied with the writ. Now Clarendon brazenly argues that its disputed claim in this lawsuit that it satisfied the Judgment by setoff can obstruct the due process of another District Court. Worse yet, that is an argument that Clarendon also made in the Northern District of Illinois, lost and then decided *not* to appeal.

Clarendon still offers no lawful basis for this Court to find (i) that an arbitration panel, a sister federal court, the Clerk of this Court, and the U.S. Marshal all erred in some unarticulated fashion and (ii) that this Court has the authority to review those actions. Instead, Clarendon claims that Trustmark's collection efforts are "nothing but pure harassment" and that "[t]here is no reason for Trustmark's conduct." (Mem. at 2.) But it is Clarendon that has failed to pay a federal court judgment, ignored the U.S. Marshal's levies of execution, and, ultimately, withheld payment from Trustmark for almost two years. Far from harassing or unreasonable, Trustmark properly levied Clarendon's bank accounts because Clarendon's unproven setoff allegations do not trump the Judgment. Indeed, Clarendon provides no basis for this Court to interfere in the U.S. Marshal's distribution of the $7.9 million Judgment to Trustmark.[2]

Clarendon, however, invokes N.Y. C.P.L.R. § 5240, which gives courts discretion to stay execution in those rare cases where there is proof that immediate execution would impose

---

[1] The parties in this matter are Plaintiffs Clarendon National Insurance Company and Clarendon America Insurance Company, collectively "Clarendon," and Defendant Trustmark Insurance Company, "Trustmark."

[2] Because the Judgment was for $6.6 million plus 9% interest since March 20, 2009, the bank deducted $7.9 million from Clarendon's account to satisfy the Judgment.

egregious hardship on powerless individuals. But the record lacks any evidence that Clarendon will suffer even minimal hardship — much less irreparable harm — absent a protective order. Far from proving hardship, Clarendon boasts that it "has a $270 million surplus." (Mem. at 2.) Moreover, Clarendon expressed no concern regarding Trustmark's capacity to return the Judgment amount if the Court were to accept Clarendon's novel satisfaction theory. (*Clarendon Nat'l Ins. Co. v. Trustmark Ins. Co.*, 09 cv 9896, Transcript of Hearing at 14:22-15:5 (Jan. 26, 2011), attached as Ex. 1 to Feb. 1, 2011 Declaration of Brian J. Neff ("Neff Decl").)

And Clarendon's theory that it already satisfied the Judgment by setoff is actually a death-knell for this motion: an essential premise to Clarendon's core substantive claim in this case is that the satisfaction issue has not previously been adjudicated. If that is true, then Clarendon is entitled to no more security for possible success than any other litigant asserting an unadjudicated claim.[3] Stated another way, Clarendon cannot have its claims in this matter paid before they have even been proven.

## ARGUMENT

Clarendon's sole basis for the extraordinary relief it seeks is the assertion that it satisfied the Judgment by announcing to Trustmark that it was setting off the Judgment against amounts allegedly due under other agreements. However, Clarendon's unproven setoff allegation does not carry its burden to stay execution of a valid, registered, federal court Judgment for three

---

[3] Because Clarendon's motion will be moot if the U.S. Marshal has distributed the Judgment to Trustmark, Clarendon also asks the Court, in the alternative, to order Trustmark to return the Judgment monies. (Mem. at 2, 9.) However, this alternative relief is a mandatory preliminary injunction, which "'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Cacchillo v. Insmed, Inc.*, --- F.3d ----, 2011 WL 1005427, at *4 (2d Cir. Mar. 23, 2011) (citation omitted) (stating the burden is higher for a mandatory preliminary injunction than for a preliminary injunction). Clarendon cannot meet this burden because this matter involves a money Judgment and Clarendon has already admitted that Trustmark is not a credit risk. (Neff Decl., Ex.1 at 14:22-15:5.)

reasons. First, Clarendon has not satisfied the Judgment. Second, Clarendon has not shown the prejudice or disadvantage required under Section 5240. Finally, Clarendon cannot justify a stay under Federal Rule of Civil Procedure 62(b)(4) because it cannot demonstrate irreparable harm from being required to comply with a final, unappealed, valid judgment.

## I. CLARENDON HAS NOT SATISFIED THE ILLINOIS JUDGMENT

Clarendon's arguments to halt enforcement all rest on the same faulty premise: that it has satisfied the Judgment by setoff. Of course, Clarendon lost its setoff claim when it permitted the arbitration award against which it claimed a setoff to ripen into a final, enforceable judgment. Regardless of its classification, the claim that Clarendon asserts here is a contested issue that has never been decided in Clarendon's favor.[4] Indeed, both the arbitration panel and the Northern District of Illinois denied Clarendon's claim for setoff. (*See* Second Corrected Final Award, Summary Judgment Ex. 60, Nov. 19, 2010 Declaration of Raymond J. Lester; *Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 09-C-1673, 2009 WL 4043110, at *2-4 (N.D. Ill. Nov. 20, 2009).)

### A. Judge Coar Denied Clarendon's Request for Satisfaction by Setoff and Entered an Enforceable Judgment

Clarendon claims that Judge Coar "declined to resolve whether Clarendon had satisfied the award" and that as a result Trustmark cannot enforce the Judgment. (Mem. at 3-4.) But the Court did resolve the issue: it denied Clarendon's request for a finding of satisfaction by setoff, confirmed the arbitration award, and entered a money Judgment in Trustmark's favor. *Trustmark*, 2009 WL 4043110, at *2-4. If this Court accepts Clarendon's argument that the "satisfaction issue" precludes Trustmark from enforcing the Judgment that means that Judge

---

[4] The validity of these setoffs remains the subject of cross-motions for summary judgment before this Court, with nearly 1,300 pages of briefs, affidavits and exhibits.

Coar simultaneously entered a judgment and rendered it unenforceable. Because Judge Coar did not engage in this futile exercise, Trustmark has an enforceable and unsatisfied Judgment.

### B. Only a Cash Payment Can Satisfy Trustmark's Money Judgment

Clarendon has not satisfied the Judgment because it has not paid Trustmark. The Judgment is "an obligation for the payment of money." *See Dowling v. Hastings*, 105 N.E. 194, 195 (N.Y. 1914). Clarendon has one option to satisfy the Judgment: "the only way a money judgment can be satisfied is by payment in money, unless the parties agree otherwise." 47 Am. Jur. 2d Judgments § 816.[5] Clarendon has not paid Trustmark nor has Trustmark agreed to accept any substitute for money.

Contrary to Clarendon's assertion, it cannot satisfy the Judgment by claiming setoff in the pending lawsuit. Not only are those allegations disputed (as discussed in the extensive summary judgment briefing before this Court) but also "[i]t is the general rule that a mere unliquidated claim cannot be used to satisfy a judgment." *D&B Enters. No. 2 v. Cablam, Inc.*, 729 N.Y.S.2d 239, 240 (App. Div. 2001) (citation omitted); *see also Willett v. Lincolnshire Mgmt., Inc.*, 756 N.Y.S.2d 9, 10 (App. Div. 2003) ("[T]here is no right to set off a possible, unliquidated liability against a liquidated claim that is due and payable ..." (citations omitted)).[6] Clarendon cannot prove satisfaction by setoff because its claims are contingent and unliquidated.

---

[5] *Accord Home State Bank/Nat'l Ass'n v. Potokar*, 617 N.E.2d 1302, 1305 (Ill. App. Ct. 1993); *Heller v. Lee*, 474 N.E.2d 856, 857 (Ill. App. Ct. 1985). *See also* 50 C.J.S. Judgments § 872 (2009) ("As a general rule, a judgment for the payment of money can be satisfied only in money, unless the judgment provides for, or the owner of the judgment agrees to, some other mode of payment.").

[6] Clarendon cites cases for the proposition that "New York law allows setoff when debts are mutual and liquidated." (Mem. at 6.) These cases are inapposite because the debts here are not mutual and liquidated. At this point, the only liquidated debt is the Judgment Clarendon owes to Trustmark.

### C. Clarendon Did Not Comply with the Legal Requirements for Satisfaction

Clarendon cannot satisfy a judgment merely by informing Trustmark that the Judgment is satisfied by setoff. In the Northern District of Illinois, satisfaction is a formal clerk-prescribed procedure, governed by Local Rule 58.1. (Attached as Ex. 3 to Neff Decl.) The clerk never entered a satisfaction in this case. Instead, the clerk certified the Judgment for registration in another district so that Trustmark could enforce it. (Certification of Judgment for Registration in Another District [Doc. No. 1], *Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co.*, No. 1:11-mc-00006-P1 (S.D.N.Y.).) When Trustmark registered the Judgment in the Southern District of New York under 28 U.S.C. § 1963, Clarendon could have registered a certified copy of the satisfaction of the Judgment. It did not.

## II. A PROTECTIVE ORDER IS NOT PROPER UNDER SECTION 5240

Section 5240 permits a court on motion to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." N.Y. C.P.L.R. § 5240 (McKinney 2011). However, Section 5240 "is a remedial tool that a court *may* use." *In re Persky*, 893 F.2d 15, 18 (2d Cir. 1989) (emphasis in original). The Court's discretion under this provision "must be used sparingly." 54 N.Y. Jur. 2d Enforcement and Execution of Judgments § 327 ("[I]t is intended to protect persons from the unnecessarily harsh or brutal use of legal procedures."). Although Clarendon invokes the Court's "broad" equitable powers (Mem. at 5), it refrains from advising the Court of the narrow circumstances under which the Court may exercise those powers under Section 5240.

### A. Section 5240 Provides Relief Only Under Extreme Circumstances that Are Not Present Here

Section 5240 "is plainly designed to prevent the *brutal* use of legal procedures against a judgment debtor." *Midlantic Nat'l Bank/North v. Reif*, 732 F. Supp. 354, 356 (E.D.N.Y. 1990)

(emphasis added).  Contrary to Clarendon's contentions, courts have applied Section 5240 when an individual faces oppressive and unnecessarily harsh enforcement procedures that threaten irreparable harm.[7]  Thus, courts use Section 5240 to prevent families from being forced out of their homes[8] or where the debtors were individuals, and the asset involved was essentially the right of the individual to work in her profession.[9]  These extreme circumstances are not present here and, in fact, underscore the impropriety of the relief requested by Clarendon.  Although paying the Judgment may be unpleasant to Clarendon, doing so will not inflict the harm or prejudice considered by courts that have granted Section 5240 relief.

Despite this standard, Clarendon insists that to obtain relief under Section 5240 it needs to show only that this case is "related" and "inextricably intertwined" with the prior proceedings

---

[7] *See, e.g., Tokio Marine & Fire Ins. Co. Ltd. v. Rosner*, No. 02-cv-5065 (RJD), 2007 WL 4373240, at *4 (E.D.N.Y. Dec. 10, 2007) (harmonizing "the debtor's interest in avoiding irreparable family harm with the legitimate interest of the creditor in securing payment of its valid debt" (citations omitted)); *Heymann v. Brechner*, No. 96 Civ. 1329 (CSH), 1996 WL 580915, at *7 (S.D.N.Y. Oct. 9, 1996) ("To act in accordance with CPLR § 5240, I must harmonize the debtor's interest in avoiding irreparable family harm with the legitimate interest of a creditor in securing payment of a valid debt." (citation omitted)); *Moskin v. Midland Bank & Trust Co.*, 409 N.Y.S.2d 327, 328 (Sup. Ct. 1978) ("[T]he exercise of the discretionary power granted by CPLR 5240 requires 'harmonizing the judgment debtor's interest in avoiding irreparable ... harm ... with the legitimate interest of a creditor in securing payment of a valid debt.'" (quoting *Holmes v. W.T. Grant. Inc.*, 71 Misc. 2d 486, 487 (Sup. Ct. 1972))).

[8] *See, e.g.*, *Midlantic*, 732 F. Supp. at 357 (execution procedure "reeked of Dickensian squalor because of the immediate and unavoidable consequences to the innocent mother and child"); *Seyfarth v. Bi-county Elec. Corp.*, 341 N.Y.S.2d 533, 535 (Sup. Ct. 1973) (Section 5240's "purpose is to protect persons from unnecessarily harsh use of legal procedures.  Perhaps nowhere is this more pertinent than in the area of unredeemable sheriff's sales of residential property"); *Holmes*, 71 Misc. 2d at 487 (granting stay because "the forced sale of a family home housing two adults and four teenage children will result in serious disruption and loss of family security").

[9] *See, e.g.*, *Tokio Marine*, 2007 WL 4373240, at *5 (physician's place of practicing medicine); *Commercial Credit Dev. Corp. v. Bailey*, 437 N.Y.S.2d 183 (App. Div. 1981) (a lawyer's partnership interest in his law firm); *Moskin*, 409 N.Y.S.2d at 328 (a broker's seat at a stock exchange).

in the Northern District of Illinois that resulted in the Judgment.  (Mem. at 8.)  Not only is that incorrect (as demonstrated above), but the authority Clarendon cites does not support a relaxed standard for Section 5240 relief.  First, *Sverdlove* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 294 N.Y.S.2d 823 (Civ. Ct. 1968), concerns a court staying its own judgment, not as is here the case the judgment of a sister federal court in Illinois.  Second, *Susan Ives, New York, Ltd.* v. *Base Lodge, Inc.*, 359 N.Y.S.2d 1001 (App. Div. 1974), concerns an appellate court staying a lower court judgment because the allegations in a separate proceeding "would have appropriately constituted a counterclaim herein."  As Judge Coar already recognized, the proceeding in Illinois was limited to confirming the Second Corrected Final Award and therefore Clarendon's setoff claim was not appropriate.  *Trustmark*, 2009 WL 4043110, at *3-4.

Moreover, Clarendon's current argument that this case is "related" and "inextricably intertwined" with the prior proceedings in the Northern District of Illinois directly conflicts Clarendon's prior representations to this Court.  When Trustmark moved to dismiss this case on *res judicata* and collateral estoppel grounds, Clarendon sought sanctions and argued that the two matters are completely <u>unrelated</u>.  Whether Clarendon now sees the cases as unrelated or related, it must still show that it will be prejudiced if the U.S. Marshal distributes the Judgment monies to Trustmark.  It has not made that showing.

       **B.**     **<u>Clarendon Has Made No Showing of Disadvantage or Prejudice</u>**

To obtain relief under Section 5240, Clarendon must show "substantial hardship and unfair burden in meeting obligations."  *Nord v. Berman*, No. 6306/91, 2004 WL 2282487, at *1 (N.Y. Dist. Ct. Oct. 8, 2004).  However, Clarendon fails to identify any disadvantage or prejudice other than its contention that enforcing Trustmark's writ of execution may temporarily deprive Clarendon of its purported right of setoff.  (Mem. at 7-8.)  As Trustmark has demonstrated, a party cannot setoff claims that are "contingent, possible, and/or *in futuro*," such

-8-

as those being litigated here, against sums reduced to judgment. (*See* Memorandum of Law Supporting Trustmark's Motion for Summary Judgment (Docket # 71), at 10-12, 31-34.)

Clarendon's temporary loss of contingent setoff claims, which it may or may not prove valid, does not constitute prejudice cognizable under Section 5240. In *Santangelo v. Estate of Goldman*, 681 N.Y.S.2d 753, 256 A.D.2d 78 (App. Div. 1998), the Supreme Court denied a judgment debtor's motion to vacate the judgment and allowed the judgment creditor to execute. The Appellate Division affirmed, noting that:

> Even if we were to view defendants' motion as one seeking to limit enforcement of the judgment pursuant to CPLR 5240, the authority provided by that section is not sufficiently plenary to allow a court acting thereunder to reduce the judgment to the extent of an unadjudicated offset claimed by the judgment debtor.

*Id*. at 80 (citing *Kolortron Sys., Inc. v. Casey*, 500 N.Y.S.2d 36 (App. Div. 1986)).  As in *Santangelo*, Clarendon's contingent claims cannot support its petition for relief under Section 5240.  Nor does Clarendon identify what harm it might suffer if the Judgment monies are released to Trustmark.  Clarendon has failed to carry its burden of proof under Section 5240.

### C.    The Balance of Equities Favors Trustmark

Courts deciding motions under Section 5240 also must weigh the competing equities to decide whether the "execution procedure strikes a fair balance between the needs of a creditor holding a valid money judgment and the needs of a debtor managing competing financial obligations." *Midlantic*, 732 F. Supp. at 357; *see also supra at* fn.6.  Here, the balance of equities tips decidedly in Trustmark's favor.

As demonstrated above, Clarendon has failed to identify any inordinate harm it will suffer if Trustmark is allowed to enforce its writ of execution.  If, however, Clarendon succeeds in delaying payment from being processed, Trustmark may be left with an uncollectable judgment against a foreign or insolvent debtor because Clarendon has been "placed under review

with negative implications" due to its impending acquisition by a foreign company.  (Dec. 28, 2010, "A.M. Best Places Ratings of Clarendon Insurance Group Under Review With Negative Implications" attached as Ex. 2 to Neff Decl.)  Such imbalance in the equities militates in favor of enforcing the writ.  *See In re Pandeff*, 201 B.R. 865, 869 (S.D.N.Y. 1996) (citing New York Supreme Court decision denying stay under Section 5240 where debtor made no showing of prejudice and creditor would be prejudiced by granting stay).

### III.   CLARENDON CANNOT OBTAIN RELIEF UNDER RULES 60(b)(5) OR 62(b)(4)

Clarendon half-heartedly repeats its prior request for:  (i) Rule 60(b)(5) relief from the Judgment claiming that it "has satisfied the judgment" and (ii) a stay of execution under Rule 62(b)(4) pending resolution of the Rule 60(b)(5) motion.  (Mem. at 9.)  But Clarendon cannot meet its burden for any of the relief that it seeks for the reasons more fully described in Trustmark's Memorandum of Law in Opposition to Clarendon's Motion for Protective Order, Satisfaction of Judgment and a Stay.  (*See* Docket # 93, at 7-11.)

First, under Rule 62, the "factors that traditionally inform the exercise of a court's discretion with respect to the issuance or denial of a stay" are:  "likelihood of success, *the threat of irreparable harm* to either side, and the public interest."  *Frankel v. I.C.D. Holdings S.A.*, 168 F.R.D. 19, 21 (S.D.N.Y. 1996) (emphasis added); *see also U.S. v. Goldstein*, No. 03 Civ. 9316, 2004 WL 2199507, at *2 (S.D.N.Y. Sept. 29, 2004) (denying Rule 62(b) motion to stay where movants could not show "likelihood of success" or "threat of irreparable injury").  This Court already expressed skepticism regarding Clarendon's ability to meet this test:

> As a practical matter, unless you get a court order staying the execution, I gather from what you've said up to now you have no irreparable harm, I'm not entirely clear that there's going to be a basis for your motion to prevail.

(Neff Decl., Ex. 1, at 24:21-24.)

Clarendon cannot show any irreparable injury because the Judgment is for money and "[i]rreparable injury is one that cannot be redressed through a monetary award." *J.S.G. Trading Corp. v. Tray Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).  Even if the Court later finds that the Judgment has been satisfied, then Trustmark can be ordered to reimburse Clarendon.  A "harm that can be remedied by a money judgment or at the end of trial is not an irreparable harm." *Kermanshah v. Kermanshah*, No. 08-CV-00409 (BSJ)(AJP), 2008 WL 4787494, at *2 (S.D.N.Y. Oct. 24, 2008) (quoting *Sung Chul Lee v. Daniel S. Choi*, 140 Fed. Appx. 299, 300 (2d Cir. 2005)).  As Clarendon has already admitted, Trustmark is not a credit risk, and therefore Clarendon cannot show irreparable harm.  (Neff Decl., Ex.1 at 14:22-15:5.)

Second, under Rule 60(b)(5), Clarendon must make "a strong showing of likelihood of success on the merits" of its motion, which requires "more than a mere possibility of relief."  *See Nken v. Holder*, 129 S.Ct. 1749, 1761 (2009) (internal citations and quotations omitted).  However, Clarendon's Rule 60(b)(5) motion necessarily fails because Clarendon has not satisfied the Judgment and Clarendon's self-proclaimed satisfaction does not meet the showing required for "extraordinary judicial relief" under Rule 60(b)(5).  *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (quotations and citations omitted).  Courts will disrupt the sanctity of a judgment "only if the moving party demonstrates exceptional circumstances, and relief under the rule is discretionary."  *Id*. (quotations and citations omitted); *see also* Fed. R. Civ. P. 60(b)(5) ("the court *may* relieve …" (emphasis added)).  Clarendon must show "highly convincing evidence in support of the motion."  *Bernstein v. Appellate Div. First Dep't*

*Disciplinary Comm.*, No. 07 Civ. 11196(SAS), 2010 WL 5129069, at *1 (S.D.N.Y. Dec. 15, 2010) (quotations and citations omitted).[10] Clarendon has not come close.

## CONCLUSION

For the foregoing reasons, Trustmark requests that this Court enter an order (i) denying Clarendon's Motion for a Protective Order, and (ii) directing the U.S. Marshal to release the Judgment monies to Trustmark. Finally, Trustmark requests any such other relief as the Court deems just and proper under the circumstances, including its attorneys' fees and costs.

DATED: April 5, 2011 SCHIFF HARDIN LLP

| | |
|---|---|
| Brian J. Neff, Esq. | By: /s/ Brian J. Neff |
| SCHIFF HARDIN LLP | David M. Spector, Esq. |
| 900 Third Avenue | Everett J. Cygal, Esq. |
| 23rd Floor | Robert C. Feldmeier, Esq. |
| New York, New York 10022 | Colin M. Proksel, Esq. |
| Tel: (212) 753-5000 | SCHIFF HARDIN LLP |
| Fax: (212) 753-5044 | 233 S. Wacker Drive |
| | Chicago, Illinois 60606 |
| ATTORNEYS FOR THE | Tel: (312) 258-5500 |
| TRUSTMARK INSURANCE COMPANY | Fax: (312) 258-5600 |

CH2\9815585

---

[10] Moreover, "motions for relief from judgment under Rule 60(b) are generally disfavored in the Second Circuit." *Id.* (citations omitted); *see also* Wright, Miller & Kane, *Federal Practice & Procedure*, § 2863 (West 2011) (noting that courts "very rarely" grant Rule 60(b)(5) relief).